Elmo M. BADON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17417.

United States Court of Appeals Fifth Circuit.

July 15, 1959.

Rehearing Dened Aug. 25, 1959.

Guy Johnson, Edmond E. Talbot, Jr., Thomas C. Wicker, Jr., New Orleans, La., for appellant.

Prim Smith, Asst. U. S. Atty., René A. Pastorek, Asst. U. S. Atty., New Orleans, La., M. Hepburn Many, U. S. Atty., New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and BROWN, Circuit Judges.

CAMERON, Circuit Judge.

The questions presented by this appeal are whether the record contains sufficient evidence to sustain the verdict of the jury in the lower court; the propriety of the submission of the entrapment issue to the jury over defense contention that the evidence reflected entrapment as a matter of law and that the issue should have been so decided by the court; and whether reversible error was committed in the Government's alleged failure to make available to the defense statements of government witnesses prior to their cross-examination. Appellant-defendant was tried to a jury in the district court and found guilty of conspiracy to commit an offense against, or to defraud the United States [1] and of receipt and concealment of merchandise brought into the United States contrary to law [2] and was sentenced to imprisonment under each of three counts of the indictment, said sentences to run concurrently. [3]

The determinant facts, as established by the jury's verdict, are simple and are based upon evidence undisputed except as the testimony given at the trial may have varied from statements of the witnesses extracted from the Government's files. On the night of April 30, 1958, two German seamen, Von Kehler and Fabian, were apprehended by the United States Customs Officials on the Mandeville Street Docks in New Orleans, La., loading suitcases containing Scotch Whisky into a taxicab. It was developed without dispute that the whisky contained no Louisiana tax stamps, that the federal tax had not been paid, and that the whisky had been brought from a ship into this country contrary to the laws and regulations governing the importation of merchandise, with the intention of selling the same to one of the night spots on Bourbon Street in New Orleans.

The officers seized the whisky, taking it to the Customs Building, and arrested the two seamen and took them to the same place for interrogation. They were questioned at length there and subsequently taken to the parish prison. The questioning continued during the following day. The seamen were disposed at first to deny that the whisky was destined for any particular club, but Von Kehler finally admitted that a definite agreement had been made with appellant that the whisky would be delivered to him at the Moulin Rouge. The officers then agreed with the two seamen that Custom Agent Hunton would accompany Von Kehler and that the whisky would be delivered to the Moulin Rouge on the night of May 1st.

Shortly after midnight of May 1st, Von Kehler and Hunton took the whisky by taxicab to the Moulin Rouge. The two entered the night club and proceeded to where appellant was standing behind the bar. Von Kehler introduced Hunton as his companion, a German seaman who could not speak English, and explained

1. Title 18 U.S.C. § 371: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined * * * or imprisoned * * * or both."

2. 18 U.S.C.A. § 545: "* * * Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law—

"Shall be fined not more than $5,000 or imprisoned not more than two years, or both.

"Proof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction for violation of this section."

3. Count 3 covered receipt of the whisky and the sentence was for 18 months plus a fine of $1,000; Count 4 covered concealment of the whisky and the sentence was for 18 months; Count 5 covered conspiracy and the sentence was for 18 months.

to appellant in Hunton's presence that the delay in making delivery of the whisky was occasioned by the difficulties they had encountered in getting the whisky from the ship to the docks. During the course of this conversation Von Kehler brought out that the whisky was that which had been stolen from the ship and that it bore no Louisiana tax stamps. Nevertheless Badon agreed to purchase the whisky and directed that Von Kehler and Hunton bring it through a public portion of the club, through a door behind the bar into a secreted back room.

Von Kehler and Hunton proceeded to the taxicab and brought in the four suitcases containing the whisky and, pursuant to directions, took it into the back room where Badon was waiting. At his direction the door to the room was kept closed, as he did not want the girls or other employees to see what was going on. By appellant's direction, the whisky was removed from the suitcases and placed, some on a table and some on the floor of the back room. Badon was proceeding to another portion of the night club to get the manager to come and agree with Von Kehler what he would pay for the whisky when other government agents stationed in the night club arrested him before the actual sale was consummated.

■ The first error argued by the appellant is the refusal of the court below to grant his motion for acquittal on the ground that the verdict of the jury was not sufficiently supported by credible evidence. We cannot agree with this contention, being convinced from a reading of the evidence that it was clearly adequate to support the conviction. In resolving questions concerning such sufficiency, this Court is bound to take the view of the evidence most favorable to the Government, and must give the Government the benefit of reasonable infer-

ences that the jury may have drawn therefrom. Rickey v. United States, 5 Cir., 1957, 242 F.2d 583; Ingram v. United States, 5 Cir., 1957, 241 F.2d 708, 709, certiorari denied 353 U.S. 984, 77 S. Ct. 1285, 1 L.Ed.2d 1143, and Lemien v. United States, 5 Cir., 1946, 158 F.2d 550.[4]

■ With respect to the conspiracy count, we do not think that it was essential for the Government's proof to show that appellant actually agreed in terms with Fabian and Von Kehler to have a common design and to strive to accomplish it by the same means. It is sufficient if, from the evidence, it appeared that the appellant acted in furtherance of the same illegal object as the other two. Under this test the evidence placed before the jury was sufficient to justify its conclusion that the appellant was engaged with the seamen in a conspiracy to effect that object.[5]

The theory of the prosecution was that Badon knew, or was sufficiently advised that the merchandise was contraband brought into this country contrary to law. The jury had before it competent evidence tending to establish: that an agreement was reached, April 30th between Badon and Von Kehler under which Badon contracted to receive with the view of purchasing over 100 bottles of this whisky; that Badon recognized Von Kehler when he and Agent Hunton arrived at the Moulin Rouge with the whisky; that he was advised that difficulty had been encountered in bringing the whisky ashore; that he directed that the whisky be taken to a back room of the club and the door closed to prevent the female employees from viewing the transaction; that appellant was told at the time of delivery that the whisky had been stolen and that it bore no Louisiana tax stamps, this being confirmed by Badon's statement to Custom Agent Craw-

4. And cf. Gendelman v. United States, 9 Cir., 1951, 191 F.2d 993; Miller v. United States, 8 Cir., 1943, 138 F.2d 258, certiorari denied 320 U.S. 803, 64 S.Ct. 429, 88 L.Ed. 485, and Butler v. United States, 7 Cir., 1943, 138 F.2d 977.

5. Duke v. United States, 5 Cir., 1956, 233 F.2d 897; Beland v. United States, 5 Cir., 1938, 100 F.2d 289, and cf. Marino v. United States, 9 Cir., 1937, 91 F.2d 691, 113 A.L.R. 975.

ford at the time of his arrest; and, finally, that Badon took possession of the smuggled goods and participated in their concealment.

■ A jury may reasonably infer the existence of an agreement and joint responsibility of a defendant in a prosecution for conspiracy from any substantial evidence that the defendant acted in furtherance of it with knowledge of the existence of an unlawful enterprise. Pullin v. United States, 5 Cir., 1939, 104 F.2d 57, and cf. Alexander v. United States, 8 Cir., 1938, 95 F.2d 873, 874; Diehl v. United States, 8 Cir., 1938, 98 F.2d 545.

In this case, it is clearly deducible from the evidence, taken in a light most favorable to the Government, that Von Kehler and Fabian, acting in concert with the defendant, confederated to accomplish a criminal purpose in violation of 18 U.S. C.A. § 371, Note 1, supra.

■ The jury's verdict on the receipt and concealment counts, we think, is also clearly supported. The evidence detailed above warranted the jury in finding that all of the elements of receipt and concealment were present, and, moreover, the appellant took actual possession of the whisky, which alone is sufficient to support the conviction unless explained to the satisfaction of the jury. See Note 2 supra, and Tomplain v. United States, 5 Cir., 1930, 42 F.2d 203, certiorari denied 282 U.S. 886, 51 S.Ct. 89, 75 L.Ed. 781. Here, no explanation at all was offered. Cf. Ahrens v. United States, 5 Cir., 1959, 265 F.2d 514, 517.

The receipt of the smuggled whisky with knowledge of its contraband character, as charged in the third count, was established by the clearest sort of evidence and conviction under it alone would warrant the sentence imposed even if the proof were not adequate to support conviction under the other two counts. We think the attack upon the sufficiency of the evidence is without merit.

■ The burden of appellant's argument is that the various statements and documents turned over to appellant under the Jencks rule so conflicted with the testimony given by the witnesses before the jury that their testimony in open court was not sufficient to provide a stable support for the jury's verdict. It is not our duty to weigh the evidence or to pass upon the credibility of witnesses. We are called upon to determine only whether there is substantial evidence, viewed from its most favorable aspect, to support the jury's verdict. Glasser v. United States, 1942, 315 U.S. 60, 62 S. Ct. 457, 86 L.Ed. 680; French v. United States, 5 Cir., 1956, 232 F.2d 736, certiorari denied 352 U.S. 851, 77 S.Ct. 73, 1 L.Ed.2d 62, and Lloyd v. United States, 5 Cir., 1955, 226 F.2d 9.

What appellant obtained from the Government's file disclosed, it seems to us, nothing more than a reluctance on the part of the seamen to tell the full story during the early stages of their interrogation. But the story they finally told, as revealed in their statements to the officers, was not unreasonable and was not so inconsistent with the testimony given by them on the witness stand that it can be characterized as unbelievable. The jury heard their testimony, as well as their statements made to the government officials, and evidently accepted the testimony they gave from the witness stand.

Nor is appellant's argument on the question of entrapment any more convincing. Relying heavily upon Sherman v. United States, 1958, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, appellant takes the position that the evidence is this case shows that his defense of entrapment is good as a matter of law.

■ We do not think so. Von Kehler testified categorically that Badon had agreed to purchase the liquor knowing that it was contraband before he or the other sailor had any contact with government officials. (The two had participated in a similar transaction on a former occasion.) Von Kehler and Fabian were engaged in making delivery pursuant to that agreement when they were apprehended by the officers. The Government merely permitted the seized liq-

uor to be delivered the following night, substituting one of its own agents for the second German seaman. We find nothing reprehensible in this action. In Sorrells v. United States, 1932, 287 U.S. 435, 441, 53 S.Ct. 210, 77 L.Ed. 413, it is said: "It is well settled that the fact that officers or employees of the government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. Artifice and stratagem may be employed to catch those engaged in criminal enterprises;" and in the separate opinion of Mr. Justice Roberts (287 U.S. at page 453, 53 S.Ct. at page 212) it is stated: "Society is at war with the criminal classes, and courts have uniformly held that in waging this warfare the forces of prevention and detection may use traps, decoys, and deception to obtain evidence of the commission of crime. * * *"

█ This rule is not repudiated or weakened in Sherman, and any purpose to do so is specifically disavowed. Entrapment is given effect as a defense on-

ly when the law officers envisage the crime, plan it and activate its commission by one not theretofore intending its perpetration; or where the officers pursue tactics which offend common concepts of decency. We have no such situation here, and the court below submitted the defense of entrapment by proper instructions and the jury found the issue against the appellant and it was amply warranted in doing so. Cf. Lathem v. United States, 5 Cir., 1958, 259 F.2d 393; Accardi v. United States, 5 Cir., 1958, 257 F.2d 168, and Kivette v. United States, 5 Cir., 1956, 230 F.2d 749.

This brings us, finally, to the two questions argued by appellant based upon his contention that he was erroneously denied production of the Government's file and certain documents therein in contravention of the decision of the Supreme Court in Jencks v. United States, 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed. 2d 1103, and the Jencks Statute, 18 U.S.C.A. § 3500.[6]

---

6. The Statute provides:

"(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) to an agent of the Government shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

"(b) After a witness called by the United States, has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

"(c) If the United States claims that any statements ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver

such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

"(d) If the United States elects not to comply with an order of the court under paragraph (b) or (c) hereof to deliv-

In connection with said decision and Statute, the decisions of the Supreme Court of the United States rendered June 22, 1959 should be considered.[7]

The former of the two points made by appellant is that the court below erred in not making all statements of Von Kehler and Fabian available to the defense prior to their cross-examination. As to Von Kehler, the two statements made by him were turned over to appellant prior to his cross-examination. During the trial a report made by Customs Agent Hunton, who accompanied Von Kehler to the Moulin Rouge, was also turned over to appellant, and Von Kehler was thereupon tendered to appellant for further cross-examination. This tender was declined. The testimony also disclosed that appellant had taken a statement from Von Kehler while he was in prison and before the trial.

■ The evidence shows clearly that Custom Agent Hunton's memorandum was made after his conversations with Von Kehler, and was not a "statement" under subdivision (e) of the Statute, and the Government was not required to submit this document to appellant, and no error can be predicated upon the timing of such submission. At all events the offer to submit Von Kehler for further cross-examination after delivery of this memorandum would cure any error if one had been made.

■ As to witness Fabian, the one statement he made was turned over to appellant, but not until after Fabian had left the stand. Appellant had not requested Fabian's statement after his cross-examination, but his failure to do so doubtless arose from the fact that the Government had volunteered to turn over all statements of witnesses it proposed to use prior to the time Fabian was offered as a witness, and it inadvertently failed to include Fabian's statement in those then turned over to appellant. Fabian, too, was tendered for further cross-examination after his statement was delivered to appellant, but the offer was not accepted. The point is wholly without merit.

■ Appellant's second point as to delivery of statements and other documents from the Government's file charges that the trial judge erred in refusing "defendant's request to make an in camera inspection of agents' report for oral statements made by government witnesses."[8]

er to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

"(e) The term 'statement,' as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

"(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

"(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

7. Pittsburgh Plate Glass Company v. United States (Galax Mirror Company, Inc.,

v. United States), 79 S.Ct. 1237; Palermo v. United States, 79 S.Ct. 1217, and Rosenberg v. United States, 79 S.Ct. 1231.

8. At the end of Von Kehler's direct examination defense counsel stated:

"If your Honor please, at this time, since the Government has relinquished the witness, we would like to be furnished with any statement, written or oral, that was made by this defendant within the course of the investigation * * *.

"The Court: All right.

"Mr. Pastorek: I am handing you now the original of two statements: one dated May 1, 1958, and one dated May 6, 1958.

"By the Court: * * * Let the record show that the Government has furnished counsel with the statements. Is that correct:

"Mr. Talbot: Yes, sir. * * * May I ask the Court to request the United States Attorney a copy of any oral statements that might have been issued by

The only government agents having any knowledge of or connection with the facts upon which the conviction rests or of the statements of witnesses, as reflected by the record, were Hunton, Green, Crawford, Schorr and Signorelli. As stated, Agent Hunton's memorandum was turned over to the appellant, and one page of Agent Crawford's memorandum was submitted to and read by appellant's counsel. Crawford's memorandum did not come within the reach of the statute, and appellant had no right to see any part of it.

Neither party questioned Agent Green while he was on the stand with reference to any statements given by witnesses, and Agents Schorr and Signorelli, whose connection was that they arrested the two seamen, took no statements and made no notes; and any report they might have made would be beyond the ambit of the Statute.

In considering whether the court below committed error in declining to make the plenary inspection of the file demanded by appellant, it should be kept in mind that the production of statements is governed solely by the Jencks Statute, that the Statute requires delivery only of the statements of witnesses who testify, that such statements are obtainable only by a motion made by the defendant, and that the sole object of delivery of the statements is to enable the defendant to impeach the testimony of witnesses used by the Government. We do not think that the record made by appellant justifies the charge of error on the part of the trial judge in dealing with this aspect of the problem.

A motion contemplates the putting on of proof, initially by the movant, and a ruling by the trial court based upon the proof. As a practical matter, the question of whether a litigant has in its possession the documents called for by such a motion is settled by statements made in open court by its attorney. Such is an easy and dependable method, and such statements made by attorneys are seldom questioned, they being officers of the court whose status is comparable to that of the judge. Cf. Atwood v. Humble Oil & Refining Co., 5 Cir., 1957, 243 F. 2d 885, 888. What an attorney does and says in the give and take of adversary litigation carry at least a prima facie presumption of honesty and accuracy.

the defendant in this matter, a resume of those statements * * *

"The Court: Do you have any resume?

"Mr. Pastorek: I have no resume of any oral statements. Those are the only statements I have any knowledge of.

"Mr. Talbot: We also request to be furnished all copies of agents' reports, the originals rather of agents' reports in this matter, to conform with the Supreme Court decision in Jencks v. United States.

"The Court: Well, I don't believe Jencks holds that at all. I have never believed that it held that and I deny the application."

When court reconvened after recess the following additional colloquy took place after the court asked if the litigants were prepared to go forward:

"Mr. Talbot: Yes, we are, Your Honor, except that we've not be [sic] handed any resume or oral testimony or report.

"The Court: They've said they had none.

"Mr. Talbot: Well I certainly don't know.

"The Court: They have no summaries of oral reports—oral statements.

"Mr. Pastorek: Your Honor, the only thing we have is a summary report of the entire case. Now in it there probably exist, in parts, statements by all types of people, who ever began [sic].

"The Court: Let me ask you, were his oral statements reduced to this report, a written statement that he signed or furnished:

"Mr. Pastorek: The oral statements he made were reduced to writing and are—the defense has an original and a copy of those statements.

"Mr. Talbot: Does that contain all the oral statements?

"Mr. Pastorek: So far as I know that contains all the oral statements other than statements made to me.

"Mr. Talbot: If Your Honor please, I don't mean to be picayunish about the whole thing, but if there are oral statements—I mean, I'd like the record examined."

Even if this were not true, the record brought before us by the appellant fails to furnish any proof to warrant our holding that the challenged rulings were error. The Government's case as to the crime charged rested essentially upon the testimony of Von Kehler, Fabian and Agent Hunton. Beyond question, all statements and memoranda of these three were turned over to the appellant.

 The residue of the Government's file, as the record before us reveals without contradiction, consisted of reports by agents who had no connection with the events which led to the appellant's conviction, and with no indication that any one of them contained any reference to any witness whom the Government had placed on the stand or any "statement" under the Statute's definitions. These reports belong, at least prima facie, to the category of statements which do not "satisfy the statutory limitations" and come within the boundaries prescribed by the Supreme Court in Palermo: "Thus the Government will not produce documents clearly beyond the reach of the statute for to do so would not be responsive to the order of the court." [79 S.Ct. 1225.]

In this state of the record it was incumbent upon the appellant as movant to establish, by some proper showing, the probability that the absent reports came within the purview of the Statute.[9] Under any theory, he carried the burden of seeing that they were "preserved in the record" under procedures specifically provided in the Statute so that their materiality under it might be considered by this Court. This he failed to do. Instead, he asked the court to suspend the trial and examine the entire Government file, piece by piece, to see if any item might be discovered which would come within the reach of the Statute.[10] He failed, more-

over, to accept the offer made in appellee's brief to submit the statements in question to us for consideration. Aside from the clear showing of the harmless character of the trial court's action—cf. the holding and language of Rosenberg, supra—and the fact that there was no showing at all that it had abused the discretion vested in it by the Statute and the Supreme Court cases listed in Note 7, appellant is not in position to claim that the trial court committed error in the challenged ruling.

Reaching, as we do, the conclusion that the case was well and fairly tried in the court below and that the claims of error by appellant are without merit, the judgment is

Affirmed.

---

9. In Palermo it is stated: "It is also the function of the trial judge to decide, in light of the circumstances of each case, what, if any, evidence extrinsic to the statement itself may or must be offered to prove the nature of the statement." [79 S.Ct. 1226.]

10. It will be observed that access to the grand jury testimony in Pittsburgh Plate Glass was denied by the lower court chiefly "on the breadth of petitioner's claim." [79 S.Ct. 1240.]