**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Vernon J. FONTENOT et al., Defendants-Appellants.**

**No. 72-1738.**

United States Court of Appeals, Fifth Circuit.

Aug. 14, 1973.

Rehearing Denied Sept. 7, 1973.

Charles E. Floyd, Phenix City, Ala., Court-appointed, for Fontenot.

Glenn Zell, Atlanta, Ga., for Crawford and Warren.

William J. Schloth, U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before TUTTLE, WISDOM and SIMPSON, Circuit Judges.

318

SIMPSON, Circuit Judge:

Vernon J. Fontenot, William Tyrone Crawford, and Jesse James Warren appeal from their several convictions for conspiracy and for various substantive violations of federal statutes concerning explosive devices and related offenses. Appellants were charged under a five-count indictment, which we summarize. Count One charged that Fontenot, Crawford, and Warren, along with co-defendants and co-conspirators, Daniel Webster Anderson and Jackie Rodgers (a/k/a "Frog"), as well as Samuel Welderson Robinson (who was named as a co-conspirator but not indicted) conspired in violation of Title 18, U.S.C., Section 371, to violate numerous United States statutes dealing with the possession and registration of destructive devices.[1] Count Two charged that the five defendants knowingly and unlawfully made destructive devices without the filing of a written application form with the Secretary of the Treasury or his delegate in violation of Title 26, U.S.C., Sections 5822, 5861(f), and 5871. Count Three charged possession by the five defendants of destructive devices without payment of the required tax in violation of Title 26, U.S.C., Sections 5821, 5861(c), and 5871. Count Four charged the five defendants with possession of destructive devices that were not registered in the National Firearms Registration and Transfer Record in violation of Chapter 53, Title 26, U.S.C. and Title 26, U.S.C., Sections 5861(d) and 5871. Lastly, Count Five charged that Crawford, Warren, and Anderson knowingly attempted to maliciously damage and destroy by means of explosives the property of Columbus Productions, Columbus, Georgia, which property was then used in interstate commerce and in activities affecting interstate commerce, in violation of Title 18, U.S.C., Section 844(i).

Anderson and Rodgers pled guilty and testified for the government at the joint trial of Fontenot, Crawford, and Warren. The jury found Fontenot guilty under the conspiracy count, Count One and acquitted him as to Counts Two, Three and Four. Crawford and Warren were found guilty under Counts One, Two, Three and Four and acquitted as to Count Five. Fontenot was sentenced to five years confinement under Count One. Crawford and Warren were also sentenced to five years confinement under Count One. These two appellants were also sentenced to concurrent seven years confinement sentences on Counts Two, Three and Four, which sentences were directed to run consecutively to the five years imprisonment imposed under Count One.

Appellants specify twelve errors on appeal. Ten of these are raised by Fontenot alone, dealing largely with the adequacy of the lower court's jury instructions as to the evidence needed to link

[1]. Count One charged Crawford, Anderson, Warren, Rodgers and Fontenot, on or about September 27, 1971, in the Middle District of Georgia, with conspiracy under Title 18, U.S.C. Sec. 371, together and with an unindicted co-conspirator, Samuel Welderson Robinson to commit offenses against the United States (1) by making, receiving and possessing firearms, to-wit, destructive devices as defined by Title 26, U.S.C. Sec. 5845 (a) and (f), in violation of Title 26, U.S.C. Sec. 5821, Sec. 5822, Sec. 5841, and Sec. 5871; and (2) by maliciously damaging and destroying by means of explosives, as defined in Title 18, U.S.C. Sec. 844(j) a building used in interstate commerce and activities affecting interstate commerce, in violation of Title 18, U.S.C. Sec. 844(i).

The count proceeded to detail the purposes and procedures contemplated by the conspiracy and to charge the commission in furtherance of the conspiracy of six overt acts, all also alleged to have occurred on or about September 27, 1971 in or near Columbus, in the Middle District of Georgia. All the overt acts dealt with the assembly by the conspirators of integral parts of explosive devices, the manufacture of such devices, and lastly in overt act no. 6, with the allegation that Anderson, aided and abetted by Crawford and Warren entered the premises of Columbus Productions with two explosive devices "consisting of two one-gallon jars of flammable fluid with paper wicks, with one of said jars containing an eight ounce jar of gunpowder."

Fontenot with the conspiracy. Crawford and Warren attack their convictions on two grounds, questioning the inducements offered Rodgers and Anderson for their testimony and raising the sufficiency of the court's jury instructions as to possession of destructive devices, under Counts Three and Four. In addition, Crawford and Warren adopt Fontenot's assignments of error. We find that no reversible error was committed below and affirm as to each of the three appellants.

### Sufficiency of the Evidence as to Conspiracy

Fontenot, Crawford, and Warren all moved for judgments of acquittal as to Count One at the close of the government's evidence and renewed these motions at the close of all the evidence. In Blachly v. United States, 5 Cir. 1967, 380 F.2d 665, in discussing the role of the trial court faced with a motion for judgment of acquittal, we noted:

"In considering the motion for judgment of acquittal, F.R.Crim.P. 29(a), the District Judge must consider the evidence in the light most favorable to the Government, McFarland v. United States, 5 Cir., 1960, 273 F. 2d 417; United States v. Carter, 6 Cir., 1963, 311 F.2d 934, together with all inferences which may reasonably be drawn from the facts. Cartwright v. United States, 10 Cir., 1964, 335 F. 2d 919. The determining inquiry is whether there is substantial evidence upon which a jury might reasonably base a finding that the accused is guilty beyond a reasonable doubt." 380 F.2d at 675.

Our function in determining whether the trial court should have granted appellants' motions for judgment of acquittal is discharged in substantially the same manner as we use in considering whether evidence is sufficient to support a verdict of guilt, Riggs v. United States, 5 Cir. 1960, 280 F.2d 949, 953, and the evidence must be considered taking the view most favorable to the Government, Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L. Ed. 680, 704. We summarize the evidence produced below in order to weigh it in the light of these principles.

The government's case rested primarily on the testimony of the two co-conspirators, Daniel Anderson and Jackie Rodgers. Taken together, this testimony presented the following sequence of events.

On September 27, 1971, appellants and several others met at the Community Action Group (CAG) headquarters in Columbus, Georgia. Present were Fontenot, Warren, Crawford, Anderson, Rodgers, and others. The group at CAG had been engaged in the manufacture of a type of ornamental jewelry—belts resembling belts of machine gun ammunition but composed of empty cartridge cases. The cartridge cases used were supplied by piercing the red wax seal found at the end of blank cartridges and removing the gunpowder into cups.[2]

While at CAG headquarters, Crawford asked Fontenot if he could make a bomb with the gunpowder. Fontenot said he could and described the manufacture of a destructive device using a mixture of gunpowder and aviation gasoline. Fontenot, Crawford, Warren, Rodgers, and Anderson then took the accumulated gunpowder from CAG headquarters and went to Fontenot's apartment. There Fontenot produced additional gunpowder in a paper sack. The gunpowder from the two sources was poured into one of three mayonnaise jars obtained from Fontenot's kitchen. During this procedure, the group discussed setting fire to an unspecified building that night.[3]

2. The gunpowder later removed from the destructive devices found at Columbus Productions contained particles of red paint and brass or copper filings. The origin of the gunpowder was thereby corroborated by independent evidence.

3. In the words of the witness Anderson, the group discussed ". . . the big push for the night, setting fires and so forth."

Fontenot stated in reply to a question by Anderson that a method to heat the device was required to produce an explosion. Fontenot asked Weldon Robinson to secure the aviation gasoline previously discussed. Robinson left and returned about 45 minutes later with a five gallon can of J.P. 4, an aviation fuel obtainable at nearby Fort Benning, Georgia, where both Robinson and Fontenot were then stationed.[4]

When Robinson returned with the fuel, Robinson and Fontenot took Fontenot's automobile to a repair shop. Anderson, Rodgers, Crawford, and Warren then went into Fontenot's bathroom. Anderson placed the jars of gunpowder inside jugs, Rodgers held the jars over the sink, and Anderson poured J.P. 4 fuel into the jugs. Warren dried the jugs and passed the jugs to Crawford who placed them in paper sacks. These four conspirators then warmed some food in Fontenot's kitchen, and while sitting around decided that Columbus Productions in Columbus, Georgia, would be the best place to set a fire that evening. Shortly thereafter, Robinson and Fontenot returned and Crawford, Warren, Anderson, and Rodgers left Fontenot's apartment. The jugs containing gunpowder and aviation fuel remained at Fontenot's apartment.

Between 7:30 and 8:30 P.M. September 27, 1971, Anderson and Warren and Geneva Pitts, returned to Fontenot's apartment. Anderson changed from his brightly colored "disheka" into a long-sleeved dark shirt and put on a pair of Fontenot's sneakers. Anderson, Warren and Fontenot removed the firebombs from their position inside the door of Fontenot's apartment to the trunk of Geneva Pitts' automobile. These three, with Pitts, rode around for a time and went to the Mayfair Grill where they met Crawford. Crawford suggested taking the firebombs to the places where they were to be used later that night. Geneva Pitts, now accompanied by Diane Jones and Barbara Moore, left in her automobile which was being used to transport the bombs, followed by Anderson, Warren, and Crawford in Crawford's truck. Ultimately, the two vehicles stopped in front of Columbus Productions. Anderson removed the two bags containing firebombs from the trunk of Pitts' car and hid them within the building. All returned to the Mayfair.

About 11:00 P.M. Crawford decided it was time to start the fire at Columbus Productions. Crawford, Warren, and Anderson then left the Mayfair and drove to the vicinity of Columbus Productions. The two previously hidden firebombs were picked up and carried by Crawford and Warren. Crawford pulled the door back and Anderson slid in on his stomach; the two jugs were slid through the door immediately thereafter. Anderson's efforts to open an inner door were unsuccessful, and the noise he created attracted the attention of James McKinney, Production Manager of Columbus Productions. McKinney captured him. Anderson escaped from the building temporarily but was soon apprehended by Columbus police officers.

4. Chemical analysis of the fuel contained in the destructive devices found at Columbus Productions matched it with a sample taken from a helicopter tank at Fort Benning. On September 27, 1971, Fontenot and Robinson were members of the 197th Aviation Company, U.S. Army, stationed at Fort Benning, Georgia. Robinson was a non-commissioned officer in charge of POL (petroleum oil and lubricants) and Fontenot was a maintenance crew chief and helicopter machine-gunner. The official positions of Robinson and Fontenot gave them access to both aviation fuel and machine gun am-

munition. This circumstance of course corroborated Anderson and Rodgers as to the origin of the components of the destructive devices later discovered. Robinson testified that he removed a five-gallon can of J.P. 4 from Fort Benning on the date of the offense, but that the fuel was contaminated (no longer fit for use as aircraft fuel) and that he intended to use it as cleaning fluid. Fontenot testified that there was a box of blank 7.62 mm ammunition in his flight bag on the date of the offense, but that it disappeared from the flight bag without his knowledge.

The elements of the federal crime of conspiracy, Title 18, U.S.C., Section 371, are (1) an agreement by two or more persons to combine efforts to achieve an illegal purpose (or to use illegal means to accomplish a legal purpose) and (2) an overt act by at least one of those persons in furtherance of the conspiracy. United States v. Falcone, 1940, 311 U.S. 205, 210, 61 S.Ct. 204, 207, 85 L.Ed. 128, 132; United States v. Warner, 5 Cir. 1971, 441 F.2d 821, 830. Proof of the illegal agreement itself may rest upon either direct evidence or upon inferences drawn from relevant and competent circumstantial evidence, usually the acts and declarations of the conspirators themselves, Rodriguez v. United States, 5 Cir. 1967, 373 F.2d 17, 18, and once the illegal conspiracy has been established, only "slight evidence" is required to connect an individual defendant with the conspiracy, United States v. Warner, supra, 441 F.2d at 830; Lopez v. United States, 5 Cir. 1969, 414 F.2d 909, 911. Our task in weighing the sufficiency of the evidence in this case ". . . is not simply whether in the opinion of the trial judge or the appellate court the evidence fails to exclude every reasonable hypothesis, but that of guilt, but rather whether the jury might reasonably so conclude." Harper v. United States, 5 Cir. 1969, 405 F.2d 185, quoting Vick v. United States, 5 Cir. 1954, 216 F.2d 228, 232. Weighing the evidence and reasonable inferences therefrom in the light most favorable to the government, Glasser v. United States, supra, leads inescapably to the conclusion that the evidence was more than amply sufficient to support both the existence of the conspiracy charged in Count One of the indictment and the further fact that Fontenot, Crawford, and Warren were each a member of that conspiracy.

In the case of Crawford and Warren, there was direct testimony that each of them personally entered into the plans for setting fire to buildings and that both also participated in five of the six overt acts charged in Count One.[5]

Their contention as to a lack of proof of Count One as to them is completely without substance. Indeed, it borders on the frivolous. The evidence of Fontenot's guilt as to the conspiracy charge was less direct, but the circumstances pointing to his guilt are compelling. The evidence showed, for instance, that the destructive devices were made and left at his apartment, that Fontenot described the procedures for making and exploding the destructive devices made in his apartment, and that he helped load the devices into the automobile in which they were transported to Columbus Productions. The evidence was ample for the jury to determine that Fontenot knew of the conspiracy. It was also shown by direct evidence that Fontenot helped obtain gunpowder for the destructive devices, as charged by Overt Act 1 of the indictment.[6] From clear proof of Fontenot's knowledge of the conspiracy and its objects, together with

5. All overt acts were alleged to have occurred on September 27, 1971. Overt Act 1 charged *Crawford*, Anderson, *Warren*, Rodgers and *Fontenot* with removal of gunpowder from ammunition cases; Overt Act 2 charged the same five persons with assembling and having a discussion at 114-A Cusseta Place Apartments, Columbus, Georgia (*Fontenot's* apartment); Overt Act 4 charged *Crawford*, Anderson and Rodgers with making destructive devices in the presence of *Warren* and *Fontenot*; overt Act 5 charged *Crawford*, Anderson and *Warren* with transporting the destructive devices from *Fontenot's* apartment to the premises of Columbus Productions at 1307 First Avenue, Columbus, Georgia; and finally Overt Act 6 charged *Crawford* and *Warren* with aiding and abetting Anderson's entry into the premises of Columbus Productions with "two explosive devices consisting of two one-gallon jars of flammable fluid with paper wicks, with one of said jars containing an eight ounce jar of gunpowder."

The only other Overt Act, number 3, charged Robinson, an unindicted co-conspirator with procuring "a quantity of flammable fluid for his co-conspirators", (referring to the five-gallon can of J.P. 4 aviation fuel.

6. See Note 5, supra.

his committing an overt act in furtherance of the conspiracy, the jury was warranted in reasonably inferring that he was a member of the conspiracy. Badon v. United States, 5 Cir. 1959, 269 F.2d 75, 79, cert. denied, 361 U.S. 894, 80 S.Ct. 199, 4 L.Ed.2d 152.

Fontenot also claims that the trial court erred in failing to withdraw overt acts numbers 2 and 4, Note 5, supra, from the jury's consideration as to him because the government did not establish that he took part in those alleged overt acts. First, we note that there was proof of his participation in Acts 1 and 2, although Fontenot's presence when Act 4 was committed was unclear. More importantly, in advancing this claim of error Fontenot completely misconstrues the law of conspiracy. To make out the crime of conspiracy, once the unlawful agreement is shown, proof of a single overt act in furtherance of that agreement by a single conspirator establishes the guilt of each member of the conspiracy, United States v. Warner, supra. It is unnecessary to show that any other conspirator was present at the commission of that overt act. Once the conspiracy has been established, and an individual defendant has been linked to it, an overt act committed by one of the conspirators is properly chargeable to all. Braverman v. United States, 1942, 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L. Ed. 23, 28. While it is error to submit to the jury an overt act as to which there is a total lack of proof, United States v. Driscoll, 1 Cir. 1971, 449 F.2d 894, but cf. Bradford v. United States, 5 Cir. 1969, 413 F.2d 467, questions of whether or not a proven overt act is in furtherance of the conspiracy are ordinarily for the jury to decide, e. g., United States v. Armone, 2 Cir. 1966, 363 F. 2d 385, 401. Here, the evidence was more than sufficient to show that coconspirators Crawford and Warren participated in overt acts 2 and 4. Those overt acts were properly admitted against Fontenot, regardless of the lack of proof as to his participation, and whether or not he was present at the time the acts were committed.

### Objections to the Jury Charge

Fontenot raises numerous objections to the trial judge's charge to the jury on the issue of conspiracy; Crawford and Warren adopt these allegations of error as well. After the jury had retired, Fontenot's counsel made only one objection to the charge—that the trial judge had failed to charge that the jury must be unanimous in order to reach a verdict. The trial judge declined to charge further on that point. That ruling is not objected to on appeal.

Not a single objection now urged to the conspiracy instructions was timely made at trial. Ordinarily, under Rule 30, F.R.Crim.P., this failure to object would preclude review of the jury instructions. United States v. Houston, 5 Cir. 1970, 434 F.2d 613, 614–615. But if the charge deprived the accused of a constitutional right or was erroneous in matters which go to the very essence of the case, then of course such errors require our recognition under the "plain error" provisions of Rule 52(b), F.R.Crim.P. United States v. Haywood, 5 Cir. 1969, 411 F.2d 555, 556; Mims v. United States, 5 Cir. 1967, 375 F.2d 135, 147. It is black letter law that whether objection is raised or not, we will not fault a trial judge for failure to instruct the jury in the precise terms advanced by an appellant, so long as the charge as a whole properly makes clear to the jury the legal principles governing their consideration. See, for example, Posey v. United States, 5 Cir. 1969, 416 F.2d 545, 555; Windisch v. United States, 5 Cir. 1961, 295 F.2d 531; United States v. McCarty, 6 Cir. 1971, 440 F.2d 681, 682; Charron v. United States, 9 Cir. 1969, 412 F.2d 657. These principles will guide us in weighing the various claims of errors as to the trial judge's jury instructions.

Fontenot urges first that it was error not to charge the jury to disregard alleged overt acts which were not supported by the evidence. The trial

court charged the elements of the offense of conspiracy, the burden of the government to prove each element of the offense beyond a reasonable doubt, and gave an unexceptionable definition of overt act. This instruction sufficed to advise the jury not to consider unproven overt acts against any conspirator, United States v. Driscoll, supra. The failure to give additional instruction along this line was not plain error.

Fontenot produced witnesses who testified as to his good reputation for truth and veracity, and requested a charge on "character" evidence. The trial court used instead its own language:

"I charge you that where a defendant has offered evidence of good general reputation for truth and veracity or honesty and integrity, the jury will consider such evidence along with all of the evidence in the case. Evidence of a defendant's reputation as to those traits of character ordinarily involved in the commission of the crime charged may give rise to a reasonable doubt because the Jury might think it improbable that a person of good character with respect to those traits would commit such a crime. In other words, you may take evidence of reputation, along with all other evidence in the case and you give it such weight as you think it deserves."

No objection was offered to this charge at trial. Appellant now contends that the instruction was plain error because it did not add "so as to warrant acquittal," or similar language following the words "may give rise to a reasonable doubt." We think it was unnecessary to repeat language already given as to the effect of the generation of reasonable doubt. That had been explained fully earlier on in the court's charge, and indeed was alluded to again a paragraph or so later. The charge is also now objected to as not pointing out that character evidence standing alone is sufficient to raise a reasonable doubt. This point is not well taken, and this would be so even if it had been preserved for

review. The charge that character evidence should be considered along with all other evidence was proper. Moore v. United States, 5 Cir. 1958, 254 F.2d 213, overruling Holland v. United States, 5 Cir. 1957, 245 F.2d 341; Grace v. United States, 5 Cir. 1925, 4 F.2d 658, cert. denied, 1925, 268 U.S. 702, 45 S.Ct. 637, 69 L.Ed. 1165; Le More v. United States, 5 Cir. 1918, 253 F. 887, cert. denied, 1919, 248 U.S. 586, 39 S.Ct. 184, 63 L. Ed. 434. Error is not demonstrated with respect to the charge given as to reputation or character evidence.

[17] Fontenot next insists that it was plain error for the trial judge to fail to charge that in order to convict him for conspiracy, the evidence must show that appellant evinced at least the degree of criminal intent required in order to convict of the substantive offenses he was accused of conspiring to commit. The trial court's instructions covered criminal intent, and further that intent to accomplish an act forbidden by law is requisite to a finding that a defendant is a member of a conspiracy. The jury was adequately informed as to the intent which must exist as to all counts charged, both conspiracy and substantive, cf. United States v. McCarty, supra. Plain error is not demonstrated in this respect.

Fontenot also claims as error the trial court's failure to charge as requested by him that "evidence of the defendant's knowledge of the purpose of the conspiracy must be clear and unequivocal." The charge given on the issue of knowledge was as follows:

"How does a person become a member of a conspiracy? A person may become a member of a conspiracy without full knowledge of all of the details of the conspiracy. On the other hand, a person who has no knowledge of a conspiracy but simply happens to act in some way which furthers the object or purpose of the conspiracy does not thereby become a conspirator. Before the Jury would be authorized to find that a defendant

or any other person has become a member of a conspiracy, the evidence must show that the conspiracy was formed in some way and that the defendant or other person who is claimed to be a member knowingly and willfully participated in some way in the unlawful plan with the intent to advance or further some object or purpose of the conspiracy. To participate knowingly and willfully means to participate voluntarily and understandingly and with specific intent to do some act which the law forbids. That is to say to participate with bad purpose either to disobey or disregard the law. So, if a defendant or any other person, with understanding of the unlawful character of a plan, intentionally encourages, advises, or assists for the purpose of furthering the undertaking or scheme, he thereby becomes a knowing and willful participant, a conspirator. Also, one who knowingly and willfully joins an existing conspiracy is charged with the same responsibility as if he had been one of the original instigators of the plan. In determining whether or not a defendant or any other person was a member of a conspiracy the Jury is not to consider what others may have said or done, that is to say, the membership of a defendant or any other person in a conspiracy must be established by evidence as to that person's own conduct, what he himself said or what he himself did."

This charge was sufficient to inform the jury as to the guilty knowledge of the purpose of a conspiracy required to show membership in such conspiracy. Failure to cast the instruction in terms of "clear and unequivocal" proof of knowledge was not erroneous, in view of the fact that the term "proof beyond a reasonable doubt" was fully explained and guilty knowledge was identified as one of the elements required to be proved beyond a reasonable doubt.

▆▆▆▆ Fontenot also claims plain error occurred below by reason of the failure of the trial judge to charge that "knowl-

edge alone" of the conspiracy would not warrant conviction. Abstractly stated, "knowledge alone" is indeed insufficient to warrant conviction for conspiracy, Dennis v. United States, 10 Cir. 1962, 302 F.2d 5, 12. But, the trial court charged both that the jury must find the existence of a conspiracy, and further that an individual defendant must be proved to be a member of it. It would have been supererogation to add that proof of "knowledge alone" would be insufficient to support conviction.

We note Fontenot's further assertion that the conspiracy instruction taken as a whole failed adequately to instruct the jury on the crime of conspiracy. Careful review of the jury charge convinces us that the jury received sufficiently complete instruction in this respect.

▆▆▆▆ Fontenot's final contention with respect to the jury instructions is that plain error occurred when the jury was not told that acts of alleged co-conspirators would not bind the appellant until he was shown by the evidence to have become a member of the alleged conspiracy. The trial judge defined the co-conspirator exception to the hearsay rule to the jury early in the trial and reminded the jury, *sua sponte* of this principle on several appropriate occasions during trial. Further, during his closing instructions he told the jury:

"If and when it appears from the evidence that a conspiracy existed and that a defendant was one of the members then the acts thereafter, knowingly done, and the statements thereafter, knowingly made, by any person likewise found by you to be a member of the conspiracy at that time, may be considered by you as evidence in the case as to the defendant found by you to have been a member of the conspiracy even though the acts and statements may have occurred in the absence and without the knowledge of the defendant provided such acts and statements were knowingly done and made during the continuance of such conspiracy and in the furtherance of

the object or purpose of the conspiracy. Otherwise, any admissions, incriminating statement, made outside of court by one person may not be considered as evidence against any person who was not present and heard the statement made."

This was a correct statement of the law, adequate in every respect. The point is without arguable merit.

### Scope of Cross-Examination of Defense Witness Luck

Fontenot urges that the trial judge committed reversible error when he allowed Fontenot's witness Shirley Luck to testify over objection to certain matters on cross-examination by the government attorney. Shirley Luck was essentially an alibi witness. On direct examination she testified to matters tending to negate at least in part the government version of the activities of all three appellants on the early afternoon of September 27, 1971, and the activities of Fontenot during the evening of that day. On cross-examination, and over appellants' objections that such events were not covered on direct, and occurred after the conspiracy had ended, Miss Luck was questioned about activities subsequent to the alleged conspiracy, including her jail visits with appellants, and her efforts to raise a defense fund for the various co-defendants. In this connection she was asked about her abandonment of assistance to Anderson when he began to talk to the authorities. The thrust of this cross-examination was to bring to light events or circumstances tending to show bias, prejudice, or interest in the outcome of the trial on the part of the witness for the purpose of discrediting that witness' testimony. The interrogation served a clearly legitimate purpose of cross-examination, as it went to the credibility of the witness, and did not exceed reasonable limits. United States v. Kartman, 9 Cir. 1969, 417 F.2d 893, 897; Ford v. United States, 5 Cir. 1956, 233 F.2d 56, 61. The scope of such cross-examination is within the sound discretion of the trial court. Ford v. United States, supra, at 61. We had recent occasion, in United States v. Dillon, 5 Cir. 1971, 463 F.2d 1093, 1095–1096 to express "concern over the confusion and wastefulness that results from the restrictive rule of cross-examination." The lower court did not abuse its discretion with regard to the scope it allowed in the cross-examination of Shirley Luck.

### No Undisclosed Plea Bargaining

As we have already indicated the government's case was structured almost completely around the testimony of Anderson and Rodgers, co-defendants of the three appellants as supplemented by the testimony of Robinson, named in the indictment as a co-conspirator but not indicted. Rodgers and Anderson had not been sentenced under their pleas of guilty at the time of the trial of Fontenot, Crawford and Warren. The appellants' briefs state that they still had not been sentenced at the time the briefs were filed. Crawford and Warren urge us to reverse this case or remand it to the district court for a determination as to whether or not the prosecution made promises regarding sentencing to Rodgers and Anderson.

The failure of the government to disclose to the defense and to the trial jury the existence of plea bargaining negotiations with a key witness deprives a defendant of Fifth Amendment due process of law. Giglio v. United States, 1972, 405 U.S. 150, 92 S.Ct. 763, 31 L. Ed.2d 104; United States v. Smith, 5 Cir. 1973, 480 F.2d 664; United States v. Tashman, 5 Cir. 1973, 478 F.2d 129. In the cases just listed the defendant presented evidence, either on direct appeal or in support of post-trial motions for new trial, indicating the existence of a bargain as to sentencing reached by the prosecution with a key government witness, not disclosed before the trial jury.

The situation in the case at bar does not fit that pattern. Following return of the indictment on February 2, and at the same court session of Febru-

ary 29, 1972, at which Fontenot, Crawford and Warren were arraigned and pled not guilty, Rodgers and Anderson were arraigned and pled guilty as charged in the indictment. Sentencing was deferred indefinitely by the trial judge. These guilty pleas were to Counts One, Two, Three, Four and Five by Anderson, and Counts One, Two, Three and Four by Rodgers. No selective pleading to one or more counts or to any reduced charge was involved. Presumably, Crawford, Warren and their counsel heard the pleas entered by Anderson and Rodgers. No claim is made as to Rule 11, F.R.Crim.P. violation at that time, and the plea session is not made a part of the record on appeal. This occurred about three weeks before the joint trial of the three appellants commenced March 20, 1972. Both Rodgers and Anderson were exhaustively cross-examined as to any prosecutional promises or even encouragement of hope with respect to reduced sentences and uniformly replied in the negative. All Jencks Act statements by them were produced to defense counsel and gave rise to extensive cross-examination. The trial judge was at pains to advise the jury that he had accepted the guilty pleas, would be the judge to sentence Rodgers, and that his uniform practice was not to pay attention to sentencing recommendations made by the U.S. Attorney or his staff.[7]

Thus this record shows that the precise issue which appellants' counsel want determined on remand of this case was fully ventilated, completely explored at trial. No showing is made warranting either reversal for new trial, or, in the alternative, remand for findings as to undisclosed plea bargaining.[8]

*Sufficiency of the Evidence, Counts Three and Four*

Crawford and Warren assert as a final ground of appeal that the evidence was insufficient to establish their possession of destructive devices as charged in Counts Three and Four of the indictment, and further that the trial judge improperly instructed the jury concerning the concept of possession as it applied to those counts.

As pointed out in the introductory portion of this opinion, Crawford and Warren each received concurrent confinement sentences of seven years

7. This is illustrated by the following colloquy occurring during the cross-examination of Rodgers by Mr. Kilpatrick, counsel for Warren:

"Q. You have indicated repeatedly on cross-examination that you have been offered no reward, do you think—do you have any hope that by testifying here today that you will help yourself as far as any sentence that you receive?

THE DISTRICT ATTORNEY: Your Honor, I object to that particular question, I think that is something beyond the proper examination, what is in his mind and his motive.

THE COURT: I overrule the objection. He can ask him what hope he may have.

I want it to be clear to the Jury, that no one has anything to do with any sentence imposed on anybody in this Court except me.

I'm the only one. The United States Attorney has nothing to do with it, the prosecuting officers don't have a thing to do with it, I'm the only one that has anything to do with any sentence imposed on anybody in this Court but the question is a proper question and you may ask him what hope he has.

MR. KILPATRICK: Isn't it a fact that even though no direct promise to you has been made or any threat to you that in your own mind right now you have hopes in your mind of the fact that your cooperation and testifying is going to help you as far as what sentence you are going to receive?

A. I am doing it on my own personal thing.

I have no hope, no more than going to the chain gang like everybody else.

Q. The only reason you are saying this is because you believe people used you?

A. That's right.

MR. KILPATRICK: No further questions."

8. Cf. United States v. Cawley and Wiggs, 5 Cir. 1973, 481 F.2d 702 [decided July 3, 1973].

under Counts Two, Three and Four. Their conviction under Count Two for the manufacture of destructive devices is not challenged on appeal. Under the harmless error doctrine, we decline to consider the claimed infirmities in Crawford's and Warren's convictions under Counts Three and Four. Roviaro v. United States, 1956, 353 U.S. 53, 77 S. Ct. 623, 1 L.Ed.2d 639; Hirabayashi v. United States, 1943, 320 U.S. 81, 63 S. Ct. 1375, 87 L.Ed. 1774; United States v. Payne, 5 Cir. 1972, 467 F.2d 828; United States v. Vigo, 5 Cir. 1970, 435 F.2d 1347.

### Conclusion

Reversible error is not demonstrated under any or either of the grounds asserted. The convictions appealed from are in all respects

Affirmed.