**UNITED STATES of America,**
**Appellee,**

v.

**Herman KNIGHT and Ralph Knight,**
**Appellants.**

**Nos. 23077, 23078.**

United States Court of Appeals
Ninth Circuit.

April 15, 1969.

**1182**

William T. Healy, Tucson, Ariz. (argued), for Herman Knight.

Benjamin Lazarow, Tucson, Ariz. (argued), for Ralph Knight.

Jo Ann D. Diamos (argued), Asst. U. S. Atty., Edward E. Davis, U. S. Atty., Tucson, Ariz., for appellees.

Before BROWNING, DUNIWAY and CARTER, Circuit Judges.

JAMES M. CARTER, Circuit Judge:

Appellants were charged with a conspiracy under 18 U.S.C. § 371 to (1) wilfully and knowingly encourage and induce Mexican aliens to enter the United States illegally, a violation of 8 U.S.C. § 1324(a) (4); (2) to wilfully and knowingly transport Mexican aliens, then illegally within the United States, a violation of § 1324 (a) (3); and (3) to wilfully and knowingly transport, Mexican aliens, then illegally within the United States, a violation of 8 U.S.C. § 1324(a) (2).

Co-conspirators John Besse and Vicente Ruiz-Tellez were named but not indicted. Appellants were convicted at a jury trial and sentenced to imprisonment for a period of two years.

Each appellant was represented by separate counsel in the trial court, and they filed separate briefs. We will consider the appeals together.

### THE QUESTIONS PRESENTED

Appellant Herman Knight contends:

(1) The evidence was insufficient to support the verdict;

(2) The prosecutor made an impermissible comment on appellant's failure to testify;

(3) It was error for the court to sustain the government's claim of privilege as to the identity of an informer.

Appellant Ralph Knight contends:

(1) The court erred in its instructions concerning declarations of a co-conspirator, made in the absence of appellant;

(2) The court failed to pass on the admissibility of the statements before allowing them to be presented to the jury.

*Appeal No. 23,077—Herman Knight*

(1) *Sufficiency of the Evidence.*

Counsel for appellant Herman Knight conceded at the argument in this court, that the record showed that Herman Knight knew of the conspiracy; but he contends that the evidence was insufficient to connect Herman Knight with it, or show his participation therein.

■■ We have examined the transcript, and viewed the evidence, as we must, in the light most favorable to the government. We find that there was sufficient evidence to show Herman Knight's participation in the conspiracy.

Ruiz-Tellez, a Mexican alien and a named co-conspirator, was one of the chief witnesses against the appellants. In late May 1967, Ruiz-Tellez had been transporting four aliens north from Nogales, Arizona, when his Pontiac car broke down. The four aliens hid in the desert. Besse, (a co-conspirator) and appellant Ralph Knight offered Ruiz-Tellez assistance, and gave him a ride back to the Pontiac with gas and oil. When the Pontiac still wouldn't start, Besse and Ralph Knight pushed the Pontiac to Besse's house in Tucson. Besse then sold his used Buick to Ruiz-Tellez for $250.00. Besse drove Ruiz-Tellez back toward Nogales to get the money. Ruiz-Tellez had him stop the car, went into the brush covered desert, collected $210.00 from the four hidden aliens and gave it to Besse. Ruiz-Tellez then transported the aliens to Idaho.

The foregoing led to Herman and Ralph Knight's entry into the conspiracy. This modern enactment of the old saying, "There's gold in them thar hills" inspired Herman and Ralph Knight.

The evidence showed that shortly thereafter, on at least four occasions, Herman and Ralph Knight went to Nogales, Sonora, the area from which the illegal Mexicans were coming, looking for, and to talk to Ruiz-Tellez. Ruiz-Tellez had not returned from Idaho. Ralph Knight and Besse finally contacted Ruiz-Tellez. They asked him where he got "the money in the desert." He told them of the smuggling and transportation venture. Ralph Knight and Besse then cut themselves into the illegal conspiracy.

Thereafter three smuggling trips to Idaho were completed and one attempted. The three trips were as follows: (1) about July 3, 1967, involving eleven aliens; (2) July 12–16, involving 17 aliens; (3) July 19, involving 12 aliens. The fourth trip started August 3, 1967, and as we shall see hereafter, resulted in the arrest of Besse.

We come to Herman Knight's participation in the conspiracy. Prior to the July 12–16 trip, Ruiz-Tellez and Ralph Knight were at Herman Knight's home. Ruiz-Tellez testified "we collected the money from the boys * * * Ralph received all the money and then gave it to Herman" in the presence of Ruiz-Tellez.

Prior to August 3, 1967, the date of the last trip, Ruiz-Tellez testified he met Herman and Ralph Knight and Besse at the Regis bar in Nogales, Sonora, Mexico. Ruiz stated at this meeting that he would take "the boys that were going to cross" to the border and asked that "they" give him the pick-up. He further testified "as soon as I took them over there, then I came back and delivered the pick-up to them," "to Ralph." He further testified he met the aliens on the American side and that he was in the Falcon station wagon with Herman Knight and went with Herman to "see if he could pick up the boys." The Falcon station wagon belonged to Herman Knight.

Herman Knight's gasoline credit cards were used to pay for gasoline for the transportation of the aliens on some of the trips from the southern part of Arizona to Idaho, and for the return trip of the vehicle. The original slips were sent to Herman Knight, along with each billing. Herman Knight's white Falcon station wagon was used in at least one of the trips.

The foregoing is sufficient to connect Herman Knight with the conspiracy. "Once the existence of a conspiracy is clearly established, slight evidence may be sufficient to connect a defendant with it." United States v. Cohen, 197 F.2d 26 (3 Cir. 1952), quoting from our decision in Nye & Nissen v. United States, 168 F.2d 846, 852 (9 Cir. 1948), affirmed 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949).

It is sufficient if the acts and conduct of a defendant were of such character that the minds of reasonable men could conclude therefrom that an unlawful agreement or understanding existed, and that the defendant, with knowledge of the existence of the unlawful enterprise, acted to further it. Badon v. United States, 269 F.2d 75, 79 (5 Cir. 1959), cert. denied 361 U.S. 894, 80 S.Ct. 199, 4 L.Ed.2d 152 (1959). It was the province of the jury to determine if a conspiracy existed and if appellant Herman Knight was part of it. Davenport v. United States, 260 F.2d 591, 598 (9 Cir. 1958), cert. denied 359 U.S. 909, 79 S.Ct. 585, 3 L.Ed.2d 573 (1959).

One may join a conspiracy already formed and in existence, and be bound by all that has gone on before in the conspiracy, even if unknown to him. "[T]he new member is as guilty as though he was an original conspirator," Marino v. United States, 91 F.2d 691, 113 A.L.R. 975 (9 Cir. 1937), cert. denied sub nom. Gullo v. United States, 302 U.S. 764, 58 S.Ct. 410, 82 L.Ed. 593 (1938).

Herman Knight puts great weight upon the fact that at an early meeting some time in May or June of 1967, Ruiz-Tellez testified that he, Herman, and Ralph Knight started to make a deal concerning the transportation of a particular group of aliens, but that Herman said he would see if he would make a deal or not. Herman then said, in the presence of appellant Ralph Knight and Ruiz-Tellez, apparently speaking to Ralph Knight, ";It's up to you * * * it's up to you if you want to, go ahead if you want to." This is certainly no statement that Herman had still to make up his mind. A possible interpretation, and one which the jury apparently believed, was that Herman was telling Ralph, that Ralph could make the particular deal or not.

There was a well organized conspiracy of transporting many aliens to the Idaho area, at about $200.00 an alien. The evidence is sufficient to show Herman's participation and his assignment of error is without merit.

### (2) The Alleged Impermissible Comment To the Jury.

The prosecutrix, in arguing the case to the jury, stated in part:

"Where is the profit, he says, where is the money? What did Mrs. Ruiz say? $663 taken away from her to get her husband an attorney, money that had been gathered from those other poor men up there working and then taken down to Mexico and dumped down there. Are we supposed to pry into people's private lives, do we have those powers to produce where the money went? * * *"

At the time the assignment of error was made, out of the presence of the jury, the court stated that it could not reasonably construe the arguments of counsel to be a comment on the failure of the appellant to take the stand. The court stated: "I know sitting here I got no such slant from it and actually it did not even dawn on me until Mr. Healy made his motion a moment ago." We have the same trouble in construing the argument as an impermissible comment. There was no mention of either Herman or Ralph Knight. We cannot

construe the comment as one concerning the failure of either appellant to take the witness stand. We find no error.

### (3) Refusal by the Court to Require the Government to Reveal the Identity of The Informer.

The case, from an investigative standpoint, broke wide open when government agents, on the night of August 3, 1967, stopped a GMC camper and arrested Besse and 10 aliens. Government agents had testified that they had received information that 10 aliens were coming over the border that night. The defense asked from whom the information came. The government objected on the basis of privilege, and the court sustained the government's objection.

Counsel states in his brief, "We are not concerned with the issue of the reliability of the informer so as to constitute grounds for a valid arrest on the night of August 3, 1967. However * * * it is apparent from the record that without the use of the informer, plaintiff lacked any sufficient basis whatsoever for the ultimate arrest of the defendant (Herman Knight)."

It does not appear to be so apparent. Herman Knight was arrested on November 9, 1967, following the return of an indictment on November 8, and the issuance of a bench warrant for arrest on the same date. The arrest of Herman Knight lawfully followed the return of the indictment.

The events of the night of August 3, 1967, would not have been sufficient to connect Herman Knight with the conspiracy. A Dodge camper was under surveillance in Mexico that evening, and a witness identified Herman Knight as its driver. But there the proof stopped as to Herman Knight. The Dodge camper was later seen near Besse's home in Tucson. The driver was not identified. Later a red panel truck and the GMC camper rendezvoused along the highway. People were seen standing around the two vehicles. Still later the GMC camper was stopped and Besse, the driver, and the 10 aliens were arrested.

The red panel truck was not followed or stopped, and the driver of the red panel truck was never identified. As one government witness stated, "We were hoping to catch a load of aliens and we were keeping hands off of everything until we had them, give them every opportunity."

It is thus apparent that the identity of the informer who supplied the tip leading to the surveillance of August 3, 1967, would in no way have benefited Herman Knight. He was not in the GMC camper when it was stopped in the United States, and he was identified only as having driven another vehicle in Mexico. The events of August 3, 1967, and the arrest of Besse did not connect him with the conspiracy.

The arrest of Besse and the aliens on August 3, 1967, was the end event in the conspiracy. Prior to this time at least three loads of aliens had been transported north into Idaho as part of the conspiracy. If there was any error in refusing to disclose the identity of the informer as to the last load of aliens, it was clearly not prejudicial. The guilt of both appellants was overwhelmingly demonstrated by what transpired prior to August 3, 1967. Affirmed as to Herman Knight.

### Appeal No. 23,078—Ralph Knight.

Appellant Ralph Knight's two contentions can be handled together. He contends the trial court failed to pass on the admissibility of statements of co-conspirators before allowing them to be presented to the jury, and the court improperly instructed the jury on the matter. We do not agree.

The order of proof in a conspiracy case is within the discretion of the trial judge. Generally he may (1) admit certain evidence, subject to a later motion by the prosecutor to apply the evidence to all or certain defendants, or (2) admit the evidence as to all defendants, subject to a motion to strike if not connected up with all or certain defendants. The trial court here followed the latter course. He ruled on the admissi-

bility of the evidence as it came in. In addition, the trial court repeatedly gave instructions to the jury as to how the evidence was to be *considered* by them.

The court, on several occasions, instructed the jury that certain evidence should not be considered as against appellant Ralph Knight, unless the jury found beyond a reasonable doubt that there was a conspiracy, and that Ralph Knight was a member thereof, and that the act or statement testified to, was done or made in furtherance of the conspiracy.

■ Carbo v. United States, 314 F.2d 718, 735–738 (9 Cir. 1963), cert. denied Palmero v. United States, 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964), rehr. den. 377 U.S. 1010, 84 S.Ct. 1902, 12 L.Ed.2d 1058 (1964), holds that once the trial court has ruled on the admissibility of the evidence the jury's function is to determine if the evidence is credible and convincing beyond a reasonable doubt. The court also held it was not error to *refuse* to give an instruction similar to the ones given in the case at bar. But footnote 20 in *Carbo* shows that the trial court gave instructions as to two defendants, similar to those given here, and the conviction was affirmed as to each defendant.

> "The law is indeed not wholly clear as to who must decide whether such a declaration may be used; but we think that the better doctrine is that the judge is always to decide, as concededly he generally must, any issues of fact on which the competence of evidence depends, and that, if he decides it to be competent, he is to leave it to the jury to use like any other evidence, without instructing them to consider it as proof only after they too have decided a preliminary issue which alone makes it competent."

United States v. Dennis, 183 F.2d 201, 231 (2 Cir. 1950), affirmed on other grounds, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

■ Although the challenged instructions "unnecessarily gave the jury an opportunity to second-guess" the judge's decision on admissibility, they were "unduly generous to appellant" Ralph Knight. He cannot be heard to complain. United States v. Ragland, 375 F.2d 471, 479 (2 Cir. 1967); White v. United States, 394 F.2d 49, 54 (9 Cir. 1968); United States v. Stadter, 336 F.2d 326, 330 (2 Cir. 1964), cert. denied 380 U.S. 945, 85 S.Ct. 1028, 13 L.Ed.2d 964; United States v. Stromberg, 268 F.2d 256, 266 (2 Cir. 1959), cert. denied Lessa v. United States, 361 U.S. 863, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959).

Affirmed as to Ralph Knight.