**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William L. CALLAHAN et al., Defendants-Appellants.**

**No. 71-1235.**

United States Court of Appeals,
Ninth Circuit.

June 22, 1971.

---

26. See Crown Central Petroleum Corp. v. N.L.R.B. 430 F.2d 724, 731 (5th Cir. 1970).

Earle A. Partington (argued), William H. McAdam, Jr., San Diego, Cal., for defendants-appellants.

Howard B. Frank, Asst. U. S. Atty. (argued), Harry D. Steward, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before CHAMBERS, BARNES and CHOY, Circuit Judges.

BARNES, Circuit Judge:

The three named appellants were originally joined with five other defendants (Antonio Hinojosa, Norma Stucker, Ray Stucker, Jeffrey Walker,[1] and Marie Wilks, also known as Mary Weeks) in a ten count indictment. It charged in Count One a conspiracy (18 U.S.C. § 371) to violate 8 U.S.C. § 1324 (smuggling of aliens), and nine substantive counts of either encouraging or inducing entry of aliens into this country from Mexico; bringing or attempting to bring in aliens; or transporting and moving aliens within the United States; in each instance knowing such actions were unlawful.

The plan of the conspiracy was to have a Mexican national contact individuals in Mexico desirous of coming to this country. The contact put them in the charge of "a guide" who brought them illegally into San Diego to the Rio Hotel (operated by "Mary Wilks") where the unlawfully entered aliens would be picked up by the Callahans or the Stuckers, who would then, in rented cars, drive the aliens around Route 5 immigration check points, by passing through remote gates of the Camp Pendleton Marine Base.

The trial of the Stuckers was severed, and they became government witnesses against appellants. Three illegally entered Mexican nationals who had been apprehended also testified against appellants. Roberto Hinojosa-Diaz waived a jury, and was found not guilty of conspiracy, but guilty of Counts Two, Three and Eight (inducing aliens to enter the United States). He was sentenced to five years on each count, to run concurrently. Antonio Hinojosa-Diaz and the two Callahans were found guilty of all ten counts, and each received the same 5-year term, on each count, to run concurrently.

## I. The Callahan Appeal.

The Callahans appeal on two grounds; first, the insufficiency of the evidence as to Counts Two, Three, Four, Five, Eight and Nine, and second, that the jury was not allowed to hear certain stipulated testimony.[2]

No objection was made by the Callahans to the sufficiency of the evidence as to Counts One, Six, Seven and Ten. Because the sentences are concurrent on all counts, it is well settled law we need not consider any errors claimed as to Counts Two, Three, Four, Five, Eight and Nine. The evidence clearly supports the convictions as to Counts One, Six, Seven and Ten, and each of them.

1. Defendant Walker faded out of the case, both by his failure to appear, and by the lack of testimony as to any participation in overt act three of Count One (driving a vehicle on May 18, 1970).

2. This testimony was that two Mexican doctors would testify, if called, that Roberto Hinojosa-Diaz was physically ill, and unable to be physically active at the times he allegedly encouraged or induced or aided the illegal entries. One doctor was asked his opinion if on the 10th and 11th of February it "was more likely than not" that Roberto was walking around the hotel, without showing visible signs of pain. He said in his opinion it was not [R.T. 342–3].

The stipulation [R.T. p. 320, et seq.] covers the period January 3, 1970 to February 15, 1970, for one doctor, and one month prior to June 2, 1970, for the second. The testimony was that Roberto was very ill "off and on" during these periods. This testimony was offered in evidence outside the presence of the jury, as testimony relating to Roberto Hinojosa-Diaz, alone. The stipulation was between Mr. Partington, counsel for Roberto Hinojosa-Diaz, and government counsel, Mr. Frank. [R.T. pp. 320–325].

Counsel for Antonio Hinojosa-Diaz *objected* to the stipulation being read to the jury. Counsel for William Callahan *requested* that it be so read. The court ruled that the testimony related only to the guilt or innocence of Roberto, that "there is nothing in that stipulation that refers to any of your clients at all," and refused to read it to the jury.

The stipulation was of slight evidentiary value, by its terms. It was at worst pure speculation; at best mere opinion. We are satisfied the court's ruling clearly was harmless error, if error at all. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1966).

The conviction of the two Callahans is *affirmed*.

## II. *Roberto Hinojosa-Diaz's Appeal (herein Roberto).*

Roberto's appeal cites three alleged errors in his conviction by the judge on Counts Two, Three and Eight.

Applying the fundamental rule that the evidence must be viewed in the light most favorable to the conviction (Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942)), the alleged insufficiency of the evidence has no merit. The testimony of two of the aliens (Jesus Guardardo-Lopez and Abel Gasca-Flores),[3] if believed, was alone sufficient to convict on the two border crossings that occurred on February 11, 1970 (Counts Two and Three), and on February 18, 1970 (Count Eight).

Next, appellant Roberto asserts his acquittal on the conspiracy count is inconsistent with his conviction on the three substantive counts: Two, Three and Eight. The crimes charged in all seven other counts were different from those charged in Two, Three and Eight. The latter required under 8 U.S.C. § 1324(a) (4), proof of encouragement and inducement of the alien to enter the United States. The charge in Counts Four, Five and Nine under 8 U.S.C. § 1324(a) (1) was *bringing* aliens into the United States; in Counts Six, Seven, and Ten under 8 U.S.C. § 1324(a) (2), the charge was of *transporting* aliens within the United States; and in Count One, under 18 U.S.C. § 371, the charge was of *conspiring*. Each is a separate offense, and each class of offenses required different proof. The judgments were not inconsistent.

Finally, Roberto asserts collateral estoppel exists. To invoke this doctrine, there must have been a trial and determination of the facts in some *previous litigation*; a former judgment; and a proposed subsequent prosecution of the same charge of which a defendant has once been acquitted. United States v. Maybury, 274 F.2d 899 (2d Cir. 1960).

The fact that a jury verdict as to certain defendants is inconsistent with a judge's judgment as to another defendant is of no consequence.[4] Here the jury found the aliens were victims of a conspiracy but they did not name the conspirators, nor did they find Roberto was a member of that conspiracy.

The convictions of all appellants are affirmed.

---

3. R.T., pp. 12–16; 206–208.

4. To have collateral estoppel, the litigation must be "identical in all respects * * * and the controlling facts and applicable legal rules remain unchanged." Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 599–600, 68 S.Ct. 715, 720, 92 L.Ed. 898. Here, appellant asserts, "the issues and facts are *almost* exactly the same." Brief, p. 20. Thus, they are not identical.