**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Wynn Earl WESTOVER,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Bea ROBERTS, Defendant-Appellant.**

**Nos. 74–2279, 74–2262.**

United States Court of Appeals,
Ninth Circuit.

March 3, 1975.

Certiorari Denied June 16, 1975.

See 95 S.Ct. 2633.

Frank M. Mangan (argued), Federal Defender, San Diego, Cal., for defendant-appellant.

Peter Nunez, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before CHAMBERS, Chief Judge, ELY, Circuit Judge, and RICH,* Judge.

RICH, Judge:

These two appeals have been consolidated for hearing and decision on the Government's motion. Appellants Westover and Roberts were each convicted, after a jury trial, of conspiracy to smuggle and import merchandise[1] illegally, in violation of 18 U.S.C. § 371, and smuggling and illegal importation of merchandise, in violation of 18 U.S.C. § 545. Both appellants received suspended sentences, the sentences to run concurrently, and were placed on probation. Inasmuch as appellants' sentences are concurrent, we need sustain only one conviction of each appellant to affirm the judgment. United States v. Jones, 446 F.2d 12 (9th Cir., 1971). Since we affirm appellants' convictions on the conspiracy counts, we refrain from passing on the convictions for smuggling and illegal importation under § 545.[2]

Westover's arrest resulted from a search by customs agents of his vehicle, which was parked for a time at a motel in San Ysidro, California, near the border crossing into Mexico. We need not decide whether this search constituted a valid border search under Alexander v. United States, 362 F.2d 379 (9th Cir., 1966), cert. denied 385 U.S. 977, 87 S.Ct. 519, 17 L.Ed.2d 439 (1966); or United States v. Weil, 432 F.2d 1320 (9th Cir., 1970), cert. denied 401 U.S. 947, 91 S.Ct. 933, 28 L.Ed.2d 230 (1971), since we find that separate probable cause existed for the search, as held by the trial judge.

There is evidence that on November 30, 1973, appellant Roberts and alleged (although unindicted) co-conspirator Edmunds were observed placing objects inside the trunk of a vehicle, which was parked 200 to 300 yards north of the border and which the customs agents knew to be registered to Westover; that

---

* Honorable Giles S. Rich, Associate Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. Drugs called "Cyto H3 tablets," "Apia Basilon plus H3 tablets" and "CUV C Triptophane tablets."

2. Count II of the indictment charges each appellant with both smuggling merchandise and illegal importation of merchandise, in violation of 18 U.S.C. § 545. Smuggling and illegal importation are separate offenses, although both are violations of § 545, Olais-Castro v. United States, 416 F.2d 1155, 1157–1158 (9th Cir., 1969). By charging more than one offense in a single count, Count II is duplicitous. Fed.R.Crim.P. 8(a). Appellants waived this defect, however, by failing to object by motion prior to trial. Fed.R.Crim.P. 12(b)(2). Because we apply the concurrent sentence doctrine, we need not decide whether the evidence was insufficient to support a jury verdict of guilty on either of the offenses charged.

Roberts and Edmunds were confirmed to have entered from Mexico shortly before having been seen at Westover's vehicle; that within an hour thereafter Roberts and Edmunds entered from Mexico in another automobile in which illegal merchandise was found and were arrested; and that Westover, upon entering on foot from Mexico, was seen to proceed to his vehicle, open the trunk, and look inside. This evidence, when viewed with evidence that Westover was known to the customs agents to be associated with organizations promoting the legalization of laetrile [3] and to have frequently telephoned a pharmacy in Mexico employing persons who were arrested a month earlier for smuggling laetrile and who had named Westover as a trafficker in laetrile, supports the district court's finding that the search of Westover's vehicle for contraband by the customs agents was valid. Westover's attempt to flee the area in his vehicle when accosted by the customs agents provided sufficient exigent circumstances for immediate warrantless search for contraband. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

■ Westover further argues that his acquittal under another indictment of conspiracy to import merchandise illegally prohibits his conviction for conspiracy now before us under the double jeopardy clause of the Fifth Amendment. Westover has the burden of showing that the conspiracy of which he was acquitted and the conspiracy of which he was subsequently convicted constituted a single overall conspiracy. United States v. O'Dell, 462 F.2d 224, 226–227 fn. 2 (6th Cir., 1972); Sanchez v. United States, 341 F.2d 225, 227 (9th Cir., 1965), cert. den. 382 U.S. 856, 86 S.Ct. 109, 15 L.Ed.2d 94 (1965). The indictment resulting in Westover's acquittal alleged a conspiracy among Westover, one Medina, and one Aguilar, to smuggle amygdalina (laetrile) during a period ending August 27, 1973. Evidence that Westover was involved in a general continuing conspiracy to smuggle anti-cancer drugs, which Westover asserts may be inferred from the records of both trials, does not support his plea of double jeopardy in the absence of evidence that the combinations of Westover with Edmunds and Roberts, on the one hand, and Medina and Aguilar on the other, were encompassed by the same agreement. Thus, Westover's plea of double jeopardy was properly rejected by the district court.

■ Both appellants contend that the evidence is insufficient to support their conspiracy convictions. Viewing the evidence in the light most favorable to the Government, as we must on appeal, Glasser v. United States, 315 U.S. 60, 82, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Callahan, 445 F.2d 552, 554 (9th Cir., 1971), we find that the Government did present facts from which the jury could reasonably infer that both appellants were guilty of conspiracy. See United States v. Bonanno, 467 F.2d 14, 17 (9th Cir., 1972), cert. den. 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973).

■ "Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collocation of circumstances'." Glasser v. United States, *supra*, 315 U.S. at 80, 62 S.Ct. at 469, quoting from United States v. Manton, 107 F.2d 834, 839 (2d Cir., 1938). Appellant Westover furnished the transportation to San Ysidro from the San Francisco area. While he, Roberts, and Edmunds were in Tijuana, Westover offered to buy at a wholesale price, and then bought, the medicines that were later taken across the border. Although Edmunds stated that he planned to repay Westover later, the record shows that Westover purchased the medicines with his own money. Westover helped Edmunds count the purchased medicine; and after Roberts and Edmunds walked across the border,

---

3. A drug, also called "amygdalina," not available in the United States for lack of FDA approval, which some persons believe is, effective against cancer.

they placed the merchandise they were carrying in Westover's car. Westover was driving his car when the customs agents stopped him, after he attempted to evade the agents, searched the car, and seized smuggled merchandise from the trunk. From the fact that Westover was driving the car, the jury could reasonably infer that he knew of the trunk's contents. United States v. Dixon, 460 F.2d 309 (9th Cir., 1972), cert. den. 409 U.S. 864, 93 S.Ct. 157, 34 L.Ed.2d 112 (1972).

■■ Although there may be less evidence to support appellant Roberts' conviction for conspiracy, we find the evidence is sufficient. Once it is shown that a conspiracy exists, only slight evidence is required to connect a defendant with it. Nye & Nissen v. United States, 168 F.2d 846, 852 (9th Cir., 1948), aff'd 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949); United States v. Knight, 416 F.2d 1181, 1184 (9th Cir., 1969). Roberts rented and drove the car in which she and Edmunds went into Mexico for their prearranged meeting with Westover. Although there was no evidence that she participated in the conversation between Edmunds and Westover about buying the medicines, the conversation occurred in her rented car, and she was present. She was also present when Edmunds and Westover later counted the medicine. Cf. United States v. Knight, supra, at 1183–84. Edmunds' testimony was equivocal as to whether Roberts carried any of the medicine when she and Edmunds walked across the border; but Edmunds clearly stated that Roberts had possession of the key to the trunk of Westover's vehicle and that she opened the trunk so that he could put the merchandise inside. Cf. United States v. Ramos, 476 F.2d 624 (9th Cir., 1973). Finally, Roberts was driving her rented car when customs officers stopped and searched the car at the border and seized smuggled medicines. Cf. United States v. Dixon, supra.

Affirmed.