**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alejandra CARPIO, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert CARPIO, Defendant-Appellant.**

Nos. 76–2215, 76–2226.

United States Court of Appeals,
Ninth Circuit.

Dec. 28, 1976.

---

* Honorable William H. Orrick, Jr., United States District Judge, San Francisco, California, sitting by designation.

Severiano A. Rodarte (argued), Phoenix, Ariz., for defendants-appellants.

W. Ronald Jennings, Asst. U. S. Atty. (argued), Phoenix, Ariz., for plaintiff-appellee.

Before GOODWIN and SNEED, Circuit Judges, and EAST,* District Judge.

SNEED, Circuit Judge:

These are consolidated appeals from judgments of conviction under a five-count indictment charging one violation of 18 U.S.C. § 371 (conspiracy to violate 8 U.S.C. §§ 1324(a)(1) and (2)) and four violations of 8 U.S.C. § 1324(a)(2) (knowingly transporting aliens within the United States). Alejandra Carpio was convicted on the conspiracy count and on two of the three substantive counts in which she was named. She received concurrent two-year sentences for each conviction. Robert Carpio also was convicted on the conspiracy count for which he received a two-year sentence. He was

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

acquitted on the two substantive counts in which he was named. On appeal, both appellants contend that their convictions are based on insufficient evidence. Alejandra Carpio also raises several evidentiary questions.

## I. *Facts.*

Anthony Freeze, the central figure in the alleged conspiracy, was the Government's principal witness.[1] He described the operation of his smuggling scheme and the extent of his contacts with appellants.

In the latter part of 1973, Freeze met with Alejandra Carpio to discuss the transportation of aliens from the Mesa-Chandler area of Arizona to Chicago, Illinois. They decided that she would arrange to transport aliens from Mexico to the Mesa-Chandler area and Freeze would handle the Mesa-Chandler to Chicago transportation.

During 1974, Freeze made approximately 24 deliveries to Chicago. Alejandra Carpio delivered aliens for 12 to 14 of these deliveries. Robert Carpio, Alejandra Carpio's son, supplied aliens for at least four of the remaining trips. Operating at night, they either met on a deserted highway and loaded the aliens onto a truck for the trip to Chicago or made the exchange at Freeze's home or warehouse. Upon delivery to his home or warehouse, Freeze kept the aliens incarcerated until he drove, or hired someone to drive, them to Chicago. These trips lasted about 48 hours, throughout which the aliens were not permitted to leave the truck. Each alien paid Alejandra Carpio $110. Freeze collected $150 per person upon arrival in Chicago.

Telephone records indicated that during 1974 Alejandra Carpio received numerous collect telephone calls from Chicago and Mexico.

## II. *Sufficiency of the Evidence.*

■ Taking the evidence in the light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct.

457, 86 L.Ed. 680 (1942), we find that the record adequately supports Alejandra Carpio's conviction on the conspiracy count. She contends that there is no evidence indicating that the people whom they agreed to transport were aliens. Freeze, her co-conspirator, testified, however, that they discussed specifically the transportation of aliens. Furthermore, Alejandra Carpio actually told him that she would procure the people from Mexico. This evidence, coupled with their subsequent covert activities, clearly supports the jury's verdict.

■ Our affirmance of the conspiracy conviction makes it unnecessary under the concurrent sentence rule to consider her objections to the substantive counts. *United States v. Ingman,* 541 F.2d 1329 (9th Cir. 1976); *United States v. Westover,* 511 F.2d 1154 (9th Cir.), *cert. denied,* 422 U.S. 1009, 95 S.Ct. 2633, 45 L.Ed.2d 673 (1975).

■ Robert Carpio asserts that the evidence is insufficient to show he was connected to the Alejandra Carpio-Freeze conspiracy. Once the proof establishes the existence of a conspiracy, only slight evidence is necessary to link a defendant to it. *United States v. Knight,* 416 F.2d 1181, 1184 (9th Cir. 1969). This link need not be proved by direct evidence; the jury may infer a common purpose from a "development and a collocation of circumstances." *Glasser v. United States,* 315 U.S. at 80, 62 S.Ct. at 469, *quoting United States v. Manton,* 107 F.2d 834, 839 (2d Cir. 1938). Robert Carpio took his mother's place as Freeze's supplier of aliens. He operated in a similar secretive manner. Moreover, he was seen with his mother at Freeze's automotive shop. From these facts the jury could conclude that he was connected to the conspiracy.

## III. *Evidentiary Points.*

■ Alejandra Carpio contends that the trial court erred in admitting the testimony of Border Patrol Officer Ronald Johnson on the grounds that such testimony was hear-

---

1. Freeze was named in all five counts of the indictment. Prior to trial, he pleaded guilty to one of the substantive counts. The remaining four counts were dismissed.

say. Officer Johnson testified to the circumstances of an earlier detention of Alejandra Carpio for transporting aliens. The record indicates that with one exception he testified only to those events of which he had personal knowledge. Therefore, in the main Alejandra Carpio's hearsay objection is without merit. The one exception concerned his relating of the statements the aliens made during the detention. The admission of this testimony was harmless; the remaining evidence clearly supports her conviction. *See United States v. Ingman, supra.*

The trial court prohibited the use for impeachment purposes of Freeze's eleven-year-old felony conviction. Under Fed.R. Evid. 609(b), this was clearly proper.

The judgment of the trial court is affirmed.