928 F.2d 405
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel R. DAVIS, Defendant-Appellant.
 No. 90-1156.
 United States Court of Appeals, Sixth Circuit.
 March 19, 1991.
 
 On Appeal from the United States District Court for the Eastern District of Michigan, No. 88-20063; Friedman, J.
 E.D.Mich.
 VACATED AND REMANDED.
 Before KEITH and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant Daniel R. Davis ("Davis") appeals from the district court's January 25, 1990, judgment and commitment order, sentencing him to life imprisonment for conspiracy to distribute more than five kilograms of cocaine. For the reasons set forth below, we AFFIRM Davis' conviction and REMAND for resentencing.
 
 I.
 A.
 
 2
 In December 1987, William Harris ("Harris") introduced Ezeal Myles ("Myles"), his cousin, to Lem Hughes ("Hughes"). The three men agreed that Myles, who had connections with the drug trade in Los Angeles, would obtain cocaine there and furnish it to Harris and Hughes for distribution in Saginaw, Michigan. According to the scheme, Harris and Hughes were to share a percentage of the profits with Myles.
 
 
 3
 Problems developed when Myles discovered that he was not receiving his full share of the proceeds. After a failed attempt to have the money transported, Myles enlisted Davis to accompany him to Saginaw and bring back some of the proceeds.
 
 
 4
 Before departing for Michigan, Myles packaged a shipment of cocaine which would be forwarded at a later date. Shortly after arriving in Saginaw, Myles instructed his operative in California to ship the package of cocaine to him.
 
 
 5
 The package did not arrive as expected because Drug Enforcement Administration ("DEA") agents intercepted it. The package had been addressed incorrectly and employees of United Parcel Service ("UPS") opened the package in an attempt to ascertain the correct address. When UPS discovered what appeared to be cocaine, the police were notified. At trial, the parties stipulated that the package contained 821 grams of cocaine. The DEA agents replaced the real cocaine with a substitute substance and reconstructed the package. The agents also sprayed the package's interior with "clue"[1] so that anyone who touched the contents of the package would be marked. The DEA agents waited for the owner of the cocaine to inquire at UPS about the package.
 
 
 6
 Myles directed his girlfriend to call UPS and inquire about the missing package. After she ascertained that it had been located, he called and requested the package to be delivered to 2004 Limerick, Saginaw, Michigan. Posing as a UPS delivery person, a DEA agent delivered the package with the cocaine substitute to Hughes' apartment while other agents surveilled the location. Hughes received a telephone call at his residence on Whittier Street (around the corner from the Limerick address) informing him that the package had arrived. Hughes learned that the apartment's water had been shut off, leaving Hughes with the suspicion that the police might be preparing to raid the premises. Myles testified that Hughes, in the presence of Davis, explained his suspicion that a raid was imminent. Davis was instructed to remain at the house while Myles and Hughes went to investigate.
 
 
 7
 On their way to the apartment on Limerick, Hughes and Myles observed Harris and two other people approaching them with the package in hand. The group returned to the Whittier Street residence with the package. Davis, having served as a lookout while Hughes and Myles investigated the Limerick apartment, described a man he observed standing next to the fence near Hughes' backyard. Hughes assured everyone that the man Davis observed was a neighbor.
 
 
 8
 Myles opened the package to inspect the contents. Davis was standing next to Myles as Myles removed the packet of decoy cocaine, opened it, smelled it and prepared to weigh it with a triple beam scale. Soon after the package was opened, the police raided the house and arrested Myles, Hughes and Davis. The arresting officers inspected Myles, Hughes and Davis under a black light and discovered that each of them had traces of clue spray on their fingers, palms and trousers.
 
 
 9
 On January 5, 1989, a federal grand jury returned a three-count indictment against Davis, Myles, Hughes, Harris and Kirk Gilyard; a superseding indictment was returned on February 15, 1989. Count I of the indictment charged Hughes, Myles, Gilyard and Davis with conspiracy to possess with intent to distribute and to distribute five kilograms or more of a substance containing cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). Count II charged Hughes, Davis, Myles and Gilyard with attempted possession of cocaine with intent to distribute 500 grams of cocaine, in violation of 21 U.S.C. Secs. 841(a)(1), 846 and 18 U.S.C. Sec. 2. Count III charged Hughes, Davis and Myles with physical interference with a federal law enforcement search, in violation of 18 U.S.C. Secs. 2,2232(a). Hughes and Myles pled guilty to the conspiracy and testified at Davis' trial. In the course of entering his guilty plea, Hughes stated that the conspiracy distributed more than five kilograms of cocaine between March 1, 1988 and December 6, 1988. On September 8, 1989, the government filed an information against Davis. The information charged that because of three prior drug felony convictions, a conviction on the instant offense would subject Davis to a mandatory life sentence.
 
 B.
 
 10
 Davis was tried before a jury on October 16 and 17, 1989. The jury returned a guilty verdict for conspiring to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. Secs. 841(a)(1), 846. The district court sentenced Davis to a mandatory term of life imprisonment without release based upon Davis' three prior felony drug convictions and his membership in a conspiracy involving five kilograms of cocaine. See 21 U.S.C. Sec. 841(b)(1)(A). Davis filed a timely notice of appeal on January 25, 1990.
 
 II.
 
 11
 On appeal, Davis argues that the evidence presented at trial was legally insufficient to prove that he was a member of the conspiracy. He maintains that he had no idea that the conspirators were distributing cocaine; he was merely in the wrong place at the wrong time. The government responds, and we agree, that the evidence is more than sufficient to sustain the jury's verdict.
 
 
 12
 In determining whether the jury's verdict is based on sufficient evidence, we must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In applying this standard, we consider all evidence in the light most favorable to the government, giving it "the benefit of all inferences which can be reasonably drawn from the evidence ... even if the evidence is circumstantial." United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984), cert. denied, 469 U.S. 1193 (1985). It is our duty to acknowledge "the responsibility of the trier of fact ... to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.
 
 
 13
 The government is required to prove the following elements to sustain a drug conspiracy conviction under 21 U.S.C. Sec. 846: (1) the existence of a conspiracy; (2) the accused's knowledge of the conspiracy; and (3) the fact that the accused knowingly and voluntarily joined the conspiracy. See United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986). It is not necessary to charge and prove the commission of an overt act in a Sec. 846 prosecution. United States v. Dempsey, 733 F.2d 392, 396 (6th Cir.), cert. denied, 469 U.S. 983 (1984).
 
 
 14
 Davis does not challenge the evidence supporting the existence of a conspiracy; he claims, instead, that there was insufficient evidence to prove that he was a member of it.[2] Davis' contention to the conspiracy "need only be slight, if there is sufficient evidence to establish the connection beyond a reasonable doubt." Christian, 786 F.2d at 211 (quoting United States v. Batimana, 623 F.2d 1366, 1368 (9th Cir.), cert. denied, 449 U.S. 1038 (1980)). Proof of Davis' participation in what he knew to be a joint venture to achieve a common goal is sufficient to prove membership in the conspiracy. See United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir.1986), aff'd, 483 U.S. 171 (1987). Davis' participation in the conspiracy's common goal may be inferred from his response to witnessing a series of events of the conspiracy. See Christian, 786 F.2d at 211 (quoting United States v. Garcia, 655 F.2d 59, 62 (5th Cir.1981)).
 
 
 15
 Our review of the direct and circumstantial evidence linking Davis to the conspiracy leads us to conclude that the jury's verdict is supported by sufficient evidence. Myles' reputation for participating in drug trafficking was well-established in Davis' neighborhood. Myles initially approached Davis and offered him the opportunity to earn money by accompanying Myles to Michigan. Myles later clarified Davis' responsibility--to transport money from Michigan to California. Davis contends that he never asked Myles about the nature of the business to be conducted in Michigan or about the source of the money. From these facts, however, we conclude that a juror might reasonably infer from Davis' failure to inquire about the nature of the enterprise that he already held such knowledge. When Myles and Hughes departed to investigate their suspicion that a police raid would take place, Davis served as a lookout to secure the Whittier residence. Davis' response to these circumstances provides a reasonable inference that he was a participant in the conspiracy's common purpose. See Christian, 786 F.2d at 211. When the package arrived, Davis stood near Myles and observed him open and remove the substitute cocaine. As indicated by the clue spray on his hands, Davis personally handled the package's contents. These facts provide further evidence of Davis' knowing and voluntary connection with the conspiracy. See United States v. Davis, 809 F.2d 1194, 1205 (6th Cir.), cert. denied, 483 U.S. 1007 (1987). While Davis' presence at the crime scene is not sufficient to sustain a guilty verdict, " 'presence is a material and probative factor which the jury may consider in reaching its decision.' " See Christian, 786 F.2d at 211 (quoting United States v. Kincade, 714 F.2d 1064, 1065 (11th Cir.1983)). Moreover, when the police raided the Whittier residence, Davis ran into the den to create the appearance that he was merely watching television, rather than assisting Myles' inspection of the substitute cocaine. Davis' attempt to conceal his activities from the police provides additional evidence to sustain the jury's verdict. We, therefore, hold that Davis' conviction should not be reversed because when viewing the evidence and every reasonable inference in the light most favorable to the government, a rational trier of fact could have found, beyond a reasonable doubt, the essential elements of a drug conspiracy. 21 U.S.C. Sec. 846; Jackson, 443 U.S. at 319; Christian, 786 F.2d at 211.
 
 III.
 
 16
 Davis next argues that the district court erred in sentencing him under Sec. 841(b)(1)(A), an enhancement provision relating to an offense involving five kilograms or more of cocaine, because the trial testimony indicated that Davis was involved in one shipment of 821 grams of cocaine. Davis contends that the district court, therefore, should have sentenced him pursuant to Sec. 841(b)(1)(B), an enhancement provision relating to an offense involving 500 grams or more of cocaine. For the following reasons, we find that the district court did not erroneously apply Sec. 841(b)(1)(A) in sentencing Davis.
 
 
 17
 In United States v. Miller, 910 F.2d 1321 (6th Cir.1990), cert. denied, 59 U.S.L.W. 3562 (U.S. Feb. 19, 1991), we held that the entire quantity of cocaine involved in a distribution enterprise is attributable to each conspirator for sentencing purposes. Id. at 1327 (citing United States v. Sailes, 872 F.2d 735 (6th Cir.1989)). By aiding or abetting part of the common scheme, Davis aided and abetted all of it. See Sailes, 872 F.2d at 738 (for sentencing purposes, entire amount of cocaine seized at defendant's home attributed to defendant who permitted her son to sell cocaine from her home without specific knowledge of 780 grams stored on the premises). A person who joins a preexisting conspiracy may be bound by all that has gone on before in the conspiracy, even if it is unknown to him. United States v. Wilson, 500 F.2d 715, 727 (5th Cir.1974) (citing United States v. Knight, 416 F.2d 1181, 1184 (9th Cir.1969)), cert. denied, 420 U.S. 977 (1975). We, therefore, conclude that if Davis joined a conspiracy in which five kilograms of cocaine were distributed, such quantity is attributable to him for sentencing purposes.
 
 
 18
 At the sentencing hearing, the district judge determined that the conspiracy's overall distribution scheme exceeded five kilograms of cocaine.[3] We are bound to uphold the district court's factual finding unless it is clearly erroneous. United States v. Walton, 908 F.2d 1289, 1301 (6th Cir.), cert. denied, 111 S.Ct. 273 (1990).
 
 
 19
 In challenging his sentence and conviction, Davis contends that the trial record does not provide evidence that the conspiracy involved five kilograms of cocaine. Davis fails to consider that in determining relevant conduct at the sentencing phase, the district court's inquiry is not limited to evidence contained in the trial record. See 18 U.S.C. Sec. 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). The sentencing court may rely on outside evidence, including hearsay evidence that has never been subjected to cross-examination. See United States v. Wright, 873 F.2d 437, 441 (1st Cir.1989); United States v. Sciarrino, 884 F.2d 95, 97 (3d Cir.), cert. denied, 110 S.Ct. 553 (1989). To satisfy the due process requirements in sentencing, the relevant conduct considered by the court must be supported by an "evidentiary basis beyond mere allegation in an indictment." United States v. Smith, 887 F.2d 104, 108 (6th Cir.1989). Information regarding relevant conduct must be established with "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. Sec. 6A1.3. In addition, due process in sentencing demands that "the defendant be given the opportunity to rebut factors that might enhance a sentence." United States v. Castellanos, 904 F.2d 1490 (11th Cir.1990) (citation omitted) (evidence presented at codefendant's trial provided reliable evidentiary basis for district court's determination of quantity).
 
 
 20
 Myles testified at trial that during the first months of the conspiracy, he delivered approximately three ounces (84 grams) of cocaine per month to Hughes and Harris. The quantities of these deliveries increased during the nine-month conspiracy. The 821 grams of cocaine seized by the DEA agents exemplifies the amount to which the deliveries ultimately increased. Myles testimony, on its face, however, is very weak evidence for the five kilogram total.
 
 
 21
 Regarding the quantity of cocaine involved in the overall conspiracy, paragraph 29 of the presentence report stated:
 
 
 22
 The Court is reminded that at the time of the plea, Mr. Davis indicated that he was present on the day of the offense for the purpose of acting as "the muscle" or, in other words, an enforcer. Information has been received that the defendant was aware of over five kilograms of cocaine during the course of the conspiracy, as the jury found, per testimony of the codefendants.
 
 
 23
 At the sentencing hearing, Davis objected to this portion of the presentence report. Specifically, Davis' counsel objected to the allegation that Davis was present during other drug transactions, some in excess of five kilograms of cocaine, because testimony was not offered to establish that Davis was present during other drug transactions or that the transaction in which he was present involved five kilograms of cocaine. Joint Appendix at 124. The government conceded that the trial testimony did not indicate that Davis was present "during the five kilogram deals." The district court, therefore, ordered that sentence 2 of paragraph 29 be deleted and replaced it with the following:
 
 
 24
 Testimony indicates that during the course of the overall conspiracy, codefendants were involved with amounts of cocaine in excess of five kilograms.
 
 
 25
 Davis did not object to the replacement language.
 
 
 26
 Later in the sentencing hearing, Davis' counsel raised his objection to attributing five kilograms or more of cocaine to Davis merely because he aided and abetted one transaction. Joint Appendix at 125. The district court then concluded "[I]t is a conspiracy, ... he has been found guilty of the conspiracy to possess, and there's no question in the Court's mind that the overall conspiracy was for more than five kilograms." Joint Appendix at 126.
 
 
 27
 Davis' codefendant, Lem Hughes, provided probative evidence of the quantity in his plea hearing testimony. Hughes testified at his plea hearing that the conspiracy either brought into Michigan or attempted to bring in more than five kilograms of cocaine. Hughes' Plea Hearing Transcript at 25-26 (Mar. 16, 1989). Although the district court did not so indicate, Hughes' testimony is the sole reliable basis for its quantity determination.
 
 
 28
 The record does not establish that Davis was informed that the district court would consider Hughes' testimony at his plea hearing to determine the basis for Davis' sentence enhancement. Nor did Hughes' trial testimony establish the quantity of cocaine involved in the conspiracy. The district court stated that there was no question in its mind that the conspiracy involved more than five kilograms of cocaine, but the district court did not divulge the source of its knowledge. We are unwilling to speculate as to defense counsel's ability to deduce the source. If the district court explicitly stated its basis for determining the quantity of cocaine involved in the conspiracy, or the trial testimony indicated the quantity, Davis would have had an opportunity to rebut the finding. Davis, without knowledge of the basis for the district court's determination, was denied due process because he was not provided with a meaningful opportunity to rebut the quantity determination. For this reason, we remand this case to the district court with instructions to clarify the basis for its quantity determination and to provide Davis with an opportunity to rebut such testimony.
 
 
 29
 Finally, Davis argues that his life sentence constitutes cruel and unusual punishment, in violation of the eighth amendment of the United States Constitution. While Davis argued before the district court that his sentence was disproportionately longer than his coconspirators' respective sentences, he did not raise an eighth amendment challenge before the district court. We, therefore, decline to reach the merits of this issue as it was not properly preserved for appeal. See Chandler v. Jones, 813 F.2d 773, 777 (6th Cir.1987) ("It is a well-established principle of appellate review that appellate court's do not address claims not properly presented below.").
 
 IV.
 
 30
 For the foregoing reasons, we AFFIRM the conviction, VACATE the sentence and REMAND this case for further proceedings consistent with this opinion.
 
 
 31
 CONTIE, Senior Circuit Judge, concurring.
 
 
 32
 Though I concur in the result reached by the majority, I write separately for the following reasons.
 
 
 33
 Davis argues that the district court should have sentenced him under 21 U.S.C. Sec. 841(b)(1)(B), rather than 21 U.S.C. Sec. 841(b)(1)(A), because the evidence presented at his trial related to less than one kilogram of cocaine (821.47 grams), not five kilograms as required under section 841(b)(1)(A). Though "[t]he government acknowledges that the trial testimony by itself did not establish Davis' presence during other drug transactions by the conspiracy, or that the conspiracy had distributed 5 kilograms of cocaine," Appellee's Brief at 11, the government argues that the district court was not limited to the evidence presented at Davis' trial when making its sentencing determination.
 
 
 34
 The precise quantity of cocaine involved in the instant conspiracy was revealed by Hughes during his guilty plea, not at Davis' trial. Notwithstanding Davis' assertions to the contrary, a sentencing judge may consider testimony from a related trial when determining a defendant's sentence:
 
 
 35
 Appellant's first argument is that the sentencing judge erred by considering testimony from a separate trial at appellant's sentencing hearing. We find no constitutional, statutory, or procedural rule, however, that would bar the sentencing judge's consideration of relevant and reliable information of the type used in this case. Plainly, the Federal Rules of Evidence do not apply at sentencing. Fed.R.Evid. 1101(d)(3). Moreover, courts have traditionally been allowed to consider all sources of information in formulating an appropriate sentence: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. Sec. 3661.
 
 
 36
 United States v. Beaulieu, 893 F.2d 1177, 1179 (10th Cir.), cert. denied, 110 S.Ct. 3302 (1990).
 
 
 37
 In the instant action, the district court judge determined:
 
 
 38
 In this matter, the Court believes it is a conspiracy, that [Davis] has been found guilty of the conspiracy to possess, and there's no question in the Court's mind that the overall conspiracy was for more than five kilos. And that he was part of that conspiracy.
 
 
 39
 District Court's January 24, 1990 Sentencing Hearing at 14.
 
 
 40
 Despite Hughes' unequivocal admission, however, the evidence fails to prove that Davis was involved in the larger conspiracy in light of United States v. Hitow, 889 F.2d 1573 (6th Cir.1989):
 
 
 41
 Appellant Long contends that while this evidence may have been sufficient to prove his involvement in a smaller conspiracy to possess with intent to distribute less than 1,000 pounds of marijuana, it was insufficient to prove his involvement in the larger "chain" alleged in Count 1. Long contends that he was "indifferent" to the larger conspiracy[.] We are satisfied that the evidence is sufficient to prove that Long was involved in the larger conspiracy. Long had advance knowledge of the sizeable load of marijuana and was told by Erikson that he could have "all he could do." Long's subsequent actions indicate his willingness to participate in distribution of the larger load. He obtained at least two pickup loads of marijuana (totalling approximately 1,000 pounds) and knew that more marijuana was available to him if he wished to have it. His liability is determined, not by how much he actually obtained, but by the scope of his knowledge and agreement. A reasonable jury, on the basis of this evidence, could find that Long knew he was participating in a larger venture. The evidence thus showed the type of interdependence necessary for a proper application of the "chain" conspiracy principle.
 
 
 42
 Id. at 1578 (citations omitted) (emphasis in original).
 
 
 43
 The prosecution in the instant action failed to prove that Davis knew of, or agreed to participate in, the larger cocaine-trafficking conspiracy which predated Davis' entry into the conspiracy. Accordingly, this court's earlier holding in Hitow requires that we remand this action to the district court for a sentencing hearing to determine whether Davis should be held accountable for conspiring to distribute over five kilograms of cocaine. See also United States v. Walton, 908 F.2d 1289, 1302 (6th Cir.), cert. denied, 111 S.Ct. 273 (1990) ("We believe that the guidelines do not permit the District Court to hold a defendant responsible for a specific quantity of drugs unless the court can conclude the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible.... Allowing a court to find a defendant responsible for the maximum quantity of drugs that can plausibly be found could result in defendants receiving excessive sentences based on a finding of quantity that is more likely than not excessive. Such a result would violate a defendant's due process rights." (emphasis in original) (citations omitted)).
 
 
 44
 Accordingly, because the prosecution failed to prove that Davis knew of the conspiracy's prior cocaine-trafficking, this action must be remanded to the district court to determine the quantity of cocaine applicable to Davis' sentence.
 
 
 
 [1]
 "Clue" is a transparent substance that can be seen only under a black light
 
 
 [2]
 Davis also claims that his conviction should be reversed because the quantity of cocaine alleged in the indictment--5 kilograms--was not established beyond a reasonable doubt. This Court has held that "quantity of cocaine is not an element of the offense of conspiracy to distribute cocaine." United States v. Moreno, 899 F.2d 465, 473-74 (6th Cir.1990). Davis' claim, therefore, is not persuasive
 
 
 [3]
 The court stated the following:
 In this matter, the Court believes it is a conspiracy, that he has been found guilty of the conspiracy to possess, and there's no question in the Court's mind that the overall conspiracy was for more than five kilograms.
 Joint Appendix at 126 (Transcript of Sentencing Hearing (Jan. 24, 1990)).